IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES,<br><br>　　　　　Plaintiff,<br><br>　v.<br><br>SELIP S.P.A.,<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marsulex Environmental Technologies ("MET") alleges as follows for its Complaint against Selip S.p.A. ("Selip").

## NATURE OF THE ACTION

1.　This action arises from Selip's provision of defective External Fiberglass Reinforced Recycle Piping ("FRP piping") to one of MET's customers in Poland. The FRP piping Selip designed, manufactured, and supplied was deficient in a number of ways. Among other things, the piping's flanges failed to include layers required by the project's specifications, the piping's flanges were not made integrally as one piece on a mold, and the piping was poorly bonded. Shortly after MET's customer began using Selip's FRP piping, the piping started to crack. MET and its customer warned Selip several times about the problems with

the FRP piping. Selip, however, failed to adequately repair the piping in contravention of its obligations under its contract with MET. The defects eventually resulted in the catastrophic failure of the piping and forced the shutdown of the plant in which the piping was used thus causing damage to MET's reputation in the air pollutant control industry. Further, the piping's complete failure caused MET to incur significant costs to replace Selip's defective FRP piping.

2. MET brings this action against Selip for strict liability–manufacturing defect, breach of contract, breach of express warranty, breach of implied warranty, and unjust enrichment based on Selip's failure to manufacture and supply FRP piping free from material defects and in accordance with the specifications set forth in the parties' contract.

## **PARTIES**

3. MET is a Delaware corporation having its principal place of business at 200 North Seventh Street, Lebanon, Pennsylvania. MET was founded in 1934 and offers a number of services to industrial customers to assist in their control of air pollution.

4. Selip is an Italian corporation having its principal place of business at Via Provinciale, 36, I-43012, Fontanellato, Parma, Italy. Selip manufactures advanced composite materials including FRP piping.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6. Selip is subject to this Court's personal jurisdiction because it purposefully directed activities relevant to this action at MET and caused injury to MET within this Commonwealth, by acts and omissions committed inside and outside of this Commonwealth. Selip negotiated and entered into the contract at issue knowing that MET was headquartered in Pennsylvania. Further, Selip and MET engaged in numerous correspondence regarding the contract from 2010 to the Fall of 2014. At all times, Selip knew that it was corresponding with individuals located at MET's Pennsylvania headquarters.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). A substantial part of the events giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

8. MET provides air quality control systems that minimize the emission of air pollutants.

9. On or around January 22, 2010, MET entered into an engineering and procurement agreement with Zaklady Azotowe "Pulawy" S.A. ("ZAP"), a Polish chemical company that specializes in the manufacturing of fertilizer.

10. The agreement between MET and ZAP required, in part, MET to oversee the design and purchasing of goods for the construction of a Flue Gas Desulfurization Unit ("FGD Unit") to be constructed at ZAP's chemical plant in Poland.

11. The environment inside FGD Units is highly corrosive. Based on MET's past experience dealing with the environment inside FGD Units, MET determined that the FGD Unit would require FRP piping.

12. On or around June 21, 2010, MET entered into a contract with Selip in which Selip agreed to design, manufacture, and supply External FRP Recycle Piping for use in the construction of the FGD Unit at ZAP's plant.

13. The contract required Selip to, among other things, fabricate the FRP piping in accordance with Selip's recommended procedures and all approved drawings.

14. The contract also required that the inner and outer surfaces of the FRP piping be "free of cracks." Ex. A, Specification for Absorber External FRP Recycle Piping at ¶ 4.4.

15. Further, Selip warranted that the equipment provided pursuant to the contract "will be properly and professionally constructed, will meet the technical requirements of the Purchase Order including the standards and regulations as well as the best engineering practices. The equipment will be new and unused, of the

specified material, free of defects and fit for the application specified." Ex. B, Supplementary Terms and Conditions for Zaklady Azotowe "Pulawy" Project at ¶ 5.

16. Moreover, Selip warranted that the FRP piping would be "of merchantable quality, free from all defects in design, workmanship and materials, and will be fit for the particular purposes for which they are purchased and that the goods are provided in strict accordance with the specification, samples, drawings, designs or other requirements (including performance specification) approved or adopted by [MET]." Ex. C, Marsulex Purchase Order Terms and Conditions ¶ 10(b).

17. On or around February 3, 2011, Selip delivered the FRP piping to ZAP's plant.

18. Thereafter, the FGD Unit was completed and ZAP began operating the FGD Unit on or around October 2012.

19. Only a few months later, on or around January 2013, Selip was notified that there already were cracks in the FRP piping. Selip examined the FRP piping at ZAP's plant and acknowledged there were cracks in the piping. Selip, however, classified the cracks as "superficial" and filled them with resin. In reality, the cracks were an early warning sign that Selip's FRP piping was defective, and Selip's hasty repair did nothing to correct the underlying problems.

20. On or around September 16, 2013, Selip was notified that new cracks were identified in the FRP piping. The identification of even more cracks in the piping demonstrated that the problems with the piping were significant and the piping was continuing to deteriorate.

21. The FRP piping continued to crack. On April 8, 2014, Selip went to ZAP's plant to examine the cracking in the FRP piping. Again, Selip acknowledged there were cracks in the FRP piping. At this time, Selip stated that it would provide support and assistance to repair the cracks. However, contrary to the parties' agreement, Selip stated that all costs for its assistance to repair its defective piping would be charged to MET or ZAP.

22. There was a serious malfunction on the FGD Unit caused by the failure of the FRP piping on or around May 31, 2014. ZAP informed MET of this failure on June 2, 2014 and MET informed Selip of this issue the same day.

23. MET sent Selip photographs of the FRP piping's failure and resulting damage at ZAP's plant the next day. The photographs show that the FRP piping essentially exploded and tore apart causing structural damage to ZAP's pumping station facility.

24. MET informed Selip that it was ZAP's understanding that the failure was caused by a deficiency in Selip's design and manufacturing of the FRP piping.

MET requested that Selip dispatch someone to ZAP to examine the piping and determine why it failed.

25. Selip refused to send someone to ZAP's plant to examine the FRP piping.

26. The failure of the FRP piping caused the complete shutdown of ZAP's plant for about three months.

27. To repair the FGD Unit, MET was forced to replace, at MET's expense, the failed Selip FRP piping with piping from another manufacturer.

28. After the failure of the FGD Unit, MET hired a third party expert (the "Expert") to investigate the failure of Selip's FRP piping.

29. The Expert evaluated cross-sections from samples of Selip's failed FRP piping. The Expert evaluated the piping's construction via visual inspection and a modified loss on ignition test – also referred to as a burn test.

30. The Expert concluded that the FRP piping supplied by Selip was poorly constructed because Selip used low strength reinforcement and non-structural components in the flange area of the piping. Further, the Expert concluded that the flanges in the piping did not meet the design and fabrication requirements of Selip.

31. The Expert's tests revealed that the woven roving layers that were required by Selip's working procedures were not used in the flange section of the

FRP piping thus resulting in a weak pipe that could not handle the stress the pipe was intended to handle.

32.     The Expert's tests also revealed that the FRP piping included flange areas that had joints and were not made essentially from one piece as depicted in Selip's drawings and working procedures.  Selip's use of flanges with joints reduced the overall flange strength because a joint crevice was located directly behind the point of high stress in the flange hub.

33.     Further, the testing showed that there were instances of poor secondary bonding.

34.     On or around September 24, 2014, MET informed Selip that there were manufacturing defects in the FRP piping and that it was not manufactured in accordance with the parties' contract, Selip's working procedures, and Selip's design.

35.     Moreover, Selip failed to manufacture sections of the piping's flange areas in conformity with standard industry practice given that Selip prepared the piping's flanges with a non-structural short segment of pipe placed behind the flange extending the length of the elbow rather than laying-up the flange directly onto the end of the elbow.  As a result, Selip's FRP piping was not fit for its intended use.

36. MET requested payment from Selip, in the amount of $557,873.53 for the replacement pipes and other services MET was forced to render as a result of Selip's defective FRP piping.

37. On or around October 29, 2014, Selip rejected MET's request for payment.

## COUNT I
### (Strict Liability – Manufacturing Defect)

38. MET realleges and incorporates by reference the allegations set forth in paragraphs 1–37 above.

39. Selip's FRP piping was defective when it left Selip's facility because it was not manufactured in accordance with the parties' contract, Selip's working procedures, the project's design specifications, and all MET approved drawings.

40. The FRP piping was defective because it failed to include woven roving layers in the piping's flanges, the piping's flange construction was not made integrally as one piece on a mold, and it was poorly bonded.

41. The FRP piping's defective condition was directly responsible for the piping's failure in the FGD Unit at ZAP's plant.

42. As a direct and proximate result of Selip's defective FRP Piping, MET was caused to suffer the aforesaid injuries and damages.

## COUNT II
### (Breach of Contract)

43.    MET realleges and incorporates by reference the allegations set forth in paragraphs 1–42 above.

44.    On or around June 21, 2010, MET and Selip entered into a contract that required Selip to design, manufacture, and supply FRP piping in accordance with Selip's working procedures, specifications set forth by MET, and all drawings and other designs approved by MET.

45.    Selip failed to provide FRP piping in accordance with the parties' contract.

46.    As a direct and proximate result of Selip's breach, MET was caused to suffer the aforesaid injuries and damages.

## COUNT III
### (Breach of Contract)

47.    MET realleges and incorporates by reference the allegations set forth in paragraphs 1–46 above.

48.    On or around June 21, 2010, MET and Selip entered into a contract that required Selip to take all necessary action, at Selip's expense, to remedy any flaws or defects in its FRP piping.  Further, the contract permitted MET to take steps to remedy any flaws or defects in Selip's piping if Selip failed to do so and Selip agreed to reimburse MET for all expenses, including but not limited to,

material and labor costs expended by MET to repair or replace malfunctioning or nonconforming piping.

49. When notified of defects in the FRP piping, Selip failed to remedy the defects. Further, Selip failed to reimburse MET for its replacement of Selip's defective FRP piping.

50. As a direct and proximate result of Selip's breach, MET was caused to suffer the aforesaid injuries and damages.

## COUNT IV
### (Breach of Express Warranty)

51. MET realleges and incorporates by reference the allegations set forth in paragraphs 1–50 above.

52. Selip expressly warranted that the FRP piping would be "free of defects and fit for the application specified." Selip further warranted that the piping would be "of merchantable quality, free from all defects in design, workmanship and materials, and will be fit for the particular purposes for which they are purchased and that the goods are provided in strict accordance with the specification, samples, drawings, designs or other requirements (including performance specification) approved or adopted by [MET]."

53. Selip's FRP piping did not conform to these express representations because it was not free from defects, it was not fit for the particular purpose for which it was purchased, and it was not manufactured in accordance with the

specification, samples, drawings, and designs approved by MET.

54. As a direct and proximate result of MET's use of Selip's FRP piping, MET was caused to suffer the aforesaid injuries and damages.

## COUNT V
### (Breach of Implied Warranty)

55. MET realleges and incorporates by reference the allegations set forth in paragraphs 1–54 above.

56. At the time Selip contracted to supply MET FRP piping for the ZAP project, Selip knew MET intended to use the FRP piping for construction of a FGD Unit and impliedly warranted its piping to be (a) safe and fit for this particular purpose; and (b) merchantable or fit for the ordinary purposes for which FRP piping is used.

57. MET reasonably relied on the skill and judgment of Selip as to whether its FRP piping was safe and fit for its intended use.

58. Contrary to such implied warranties, Selip's piping was not fit for ordinary use, as there were numerous defects, such as the failure to incorporate a woven roving layer into the piping's flanges, which rendered the piping unfit for use and below commercial standards.  Selip's FRP piping was also not fit for the particular purpose communicated to Selip as it failed to withstand the highly corrosive nature of the FGD Unit.

59. As a direct and proximate result of MET's use of Selip's FRP piping, MET was caused to suffer the aforesaid injuries and damages.

## COUNT V
**(Unjust Enrichment)**

60. MET realleges and incorporates by reference the allegations set forth in paragraphs 1–59 above.

61. Selip has been enriched because it was paid for the FRP piping that did not have any value for MET. The piping did not have the properties Selip claimed it had, and the piping did not meet minimum manufacturing standards.

62. Permitting Selip to profit from its false representations and flawed manufacturing standards at the expense of MET would be unconscionable.

## **PRAYER FOR RELIEF**

WHEREFORE, MET respectfully requests that this Court grant Judgment in favor of MET and against Selip for compensatory damages, reasonable attorneys' fees, costs of this suit, interest at the legal rate, and such other and further relief the Court deems proper.

Dated:  February 6, 2015          By:  s/ Jennifer Dempsey

                                                   Jennifer Dempsey
                                                   DRINKER BIDDLE AND REATH LLP
                                                   One Logan Square, Ste. 2000
                                                   Philadelphia, PA  19103
                                                   Telephone:  (215) 988-2551
                                                   Facsimile:  (215) 988-2757
                                                   Jennifer.Dempsey@dbr.com
                                                   PA309164

                                                   *Counsel for Plaintiff Marsulex*
                                                   *Environmental Technologies*