# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES | : | Case No. 1:15-cv-00269 |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SELIP S.P.A., | : | |
| | : | |
| Defendant. | : | |

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Date: <u>April 15, 2015</u>       **GOLDBERG SEGALLA LLP**

<u>*/s Matthew R. Shindell*</u>
Matthew R. Shindell, Esq.
Attorney for Defendant
1700 Market St., Suite 1418
Philadelphia, PA 19103
mshindell@goldbergsegalla.com
(267) 519-6800

# TABLE OF CONTENTS

TABLE OF AUTHORITIES .................................................................................. iii

I.    PROCEDURAL HISTORY ..................................................................... 1

II.    STATEMENT OF FACTS ...................................................................... 1

III.    STATEMENT OF QUESTIONS INVOLVED ..................................... 2

IV.    LEGAL ARGUMENT ............................................................................. 3

    A.  Forum Non Conveniens .................................................................3

        1.  Poland is a Suitable Alternate Forum ............................................4

        2.  Deference to Plaintiff's Choice of Forum.......................................6

        3.  Balancing Public and Private Factors ............................................8

        a.  Private Interest Factors................................................................. 10

            i.  Relative ease of access to source of proof ........................... 10

            ii.  Ability to compel unwilling, and cost of obtaining
                attendance of, willing witnesses........................................... 11

            iii.  Possibility of view of premises ............................................ 13

        b.  Public Interest Factors................................................................. 14

            i.  Administrative difficulties flowing from court
                congestion............................................................................ 14

            ii.  Local interests in trying the case at home and
                avoiding burdening jurors ................................................... 14

            iii.  Desire to have forum match the law and weighing
                competing interests of Pennsylvania and Poland................. 16

            iv.  Unfairness of burdening citizens in an unrelated
                forum ................................................................................... 17

B.   12(b)(6) motion to dismiss Plaintiff's Strict Liability Claim ................... 18

   1.   Pleading Standard ........................................................ 18

   2.   The Economic Loss Doctrine Warrants Dismissal of
      Plaintiff's Strict Liability Claim. ................................. 19

   3.   Gist of the Action Doctrine......................................... 21

   4.   Count I Does Not Explain Whether the Strict Liability
      Claim is Based Upon the Consumer Expectations Test or
      Risk-Utility Theory. ................................................... 22

V.   CONCLUSION............................................................................ 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Archut v. Ross Univ. Sch. of Veterinary Med.,*
  2013 U.S. Dist. LEXIS 156024 (D.N.J. 2013) ................................................ 12

*Ashcroft v. Iqbal,*
  129 S. Ct. 1937 (2009) ........................................................................ 18

*Bell Atlantic v. Twombly,*
  550 U.S. 544 (2007) ........................................................................... 18

*Bohler--Uddeholm Am., Inc. v. Ellwood Grp., Inc.,*
  247 F.3d 79 (3d Cir. 2001) .................................................................... 20

*Burger King Corp.,* 471 U.S. 462 (1985) ........................................................ 12

*Conley v. Gibson,*
  355 U.S. 41 (1957) ............................................................................ 18

*Dahl v. United Techs. Corp.,*
  632 F.2d 1027 (3d Cir. 1980) .................................................................. 5

*Dawes v. Publish Am. LLLP,*
  563 Fed. Appx. 117 (3d Cir. 2014) ............................................................. 3

*Delta Air Lines, Inc. v. Chimet, S.P.A.,*
  619 F.3d 288 (3d Cir. 2010) ................................................................... 4

*Dipietro v. Glidewell Labs.,*
  2011 U.S. Dist. LEXIS 128964 (M.D. Pa. 2011) ................................................. 21

*Erie Ins. Exch. v. Abbott Furnace Co.,*
  972 A.2d 1232 (Pa. Super. 2009) ............................................................... 21

*eToll Inc., v. Elias/Savion Adver.,*
  811 A.2d 10 (Pa. Super. 2002) ................................................................. 21

*Griffith v. United Air Lines, Inc.,*
  203 A.2d 796 (Pa. 1964) ....................................................................... 16

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)................................................................................4

*Imo Indus. v. Kiekert AG*,
  155 F.3d 254 (3d Cir. 1998).................................................................. 11

*Kisano Trade & Invest Ltd. v. Lemster*,
  737 F.3d 869 (3d Cir. 2013)................................................ 4, 9, 10, 16

*Kultur Int'l Films, Ltd. v. Covenant Gordon Pioneer, FSP., Ltd.*,
  860 F. Supp. 1055 (D. N.J. 1994) ........................................................4

*Lacey v. Cessna Aircraft Co.*,
  932 F.2d 170 (3d. Cir. 1991)............................................... 5, 9, 10, 16

*Lynch v. Hilton Worldwide, Inc.*,
  2011 U.S. Dist. LEXIS 126003 (D.N.J. 2011) ....................................7

*Mountbatten Sur. Co. v. Reagerharris Inc.*,
  2000 U.S. Dist. LEXIS 333 (E.D. Pa. 2000) .................................... 11

*Palco Linings, Inc. v. Pavex, Inc.*,
  755 F. Supp. 1269 (M.D. Pa.1990)................................................... 20

*Phillips v. County of Allegheny*,
  515 F.3d 224 (3d Cir. 2008)............................................................... 18

*Piper Aircraft Co. v. Reyno*,
  454 U.S 235 (1981)............................................... 4,5, 6, 7, 16

*REM Coal Co. v. Clark Equip. Co.*,
  563 A.2d 128 (Pa.Super. 1989)......................................................... 20

*Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*,
  2006 U.S. Dist. LEXIS 78890 (E.D. Pa. 2006) ................................ 20

*Tech. Dev. Co. v. Onischenko*,
  174 Fed. Appx. 117 (3d Cir. 2006)......................................................5

*Tincher v. Omega Flex*,
  104 A.3d 328 (Pa. 2014) .................................................................. 22

*Troxel v. A.I.duPont Institute,*
    636 A.2d 1179 (Pa. Super. 1994) ........................................................ 16

*Werwinski v. Ford Motor Co.,*
    286 F.3d 661 (3d Cir. 2002) .............................................................. 19

*Windt v. Qwest Commc'ns Int'l, Inc.,*
    529 F.3d 183 (3d Cir. 2008) .................................................... 3, 15, 17

**Statutes**

Federal Rule of Civil Procedure 12(b)(6) ......................................... 18, 19

Federal Rule of Civil Procedure 45(b) .................................................. 12

Pennsylvania's Uniform Foreign Money Judgment Recognition Act,
    42 P.S. §§ 22001-22009 ...................................................................... 6

Restatement (Second) of Conflicts §145 .............................................. 16

## I. **PROCEDURAL HISTORY**

Plaintiff Marsulex Environmental Technologies instituted this action by filing a Complaint on or about February 6, 2015. *See* a true and correct copy of the Complaint attached hereto as Exhibit "A." Defendant Selip S.P.A. (hereinafter "Selip") was served with the Complaint on or about March 12, 2015 in Italy. Selip filed a motion to dismiss on April 1, 2015.

## II. **STATEMENT OF FACTS**

This product liability action arises from an accident that allegedly occurred in Poland on or about May 31, 2014. According to the Complaint, Plaintiff is a Delaware Corporation with its principal place of business in Lebanon, Pennsylvania. Exhibit "A," ¶ 3. Selip was and continues to be a resident of Parma, Italy. Exhibit "A," ¶ 4.

Plaintiff alleges it entered into an engineering and procurement agreement with Zaklady Azotowe Pulawy, S.A. ("ZAP"), a Polish chemical company. Exhibit "A," ¶ 9. Plaintiff claims to have contracted with Selip in June 2010 for the delivery of External Fiberglass Reinforced Recycle Piping ("FRP" or "Product") to be used in the construction of a Flue Gas Desulfurization Unit ("FGD Unit") at ZAP's facility in Poland. Exhibit "A," ¶ 12. Plaintiff alleges that Selip provided defective FRP, causing a serious malfunction of the FGD unit, and structural damage to ZAP's facility. Exhibit A, ¶¶ 23, 26, and 41.

Plaintiff asserts claims of manufacturing defect, breach of contract, breach of express and implied warranties, and unjust enrichment. Plaintiff is not seeking damages for personal injuries.

The product was manufactured by Selip in Italy and delivered to ZAP's plant in Poland. Plaintiff admits that all repairs to the subject Product occurred in Poland. Exhibit A, ¶¶ 19, 21, 27. ZAP and Plaintiff utilized third parties, without Selip's knowledge or authorization, to modify and change key elements of the FGD unit, thus changing the design specifications. Exhibit A, ¶ 27 Upon information and belief, all witnesses to the alleged accident and alleged damages, and all third parties involved in modifying and changing the FGD unit are residents of Poland.

## III.  STATEMENT OF QUESTIONS INVOLVED

1.  Should Plaintiff's claim be dismissed pursuant to the Doctrine of *Forum Non Conveniens*?

**Suggested Answer:  Yes**

2.  Does the Economic Loss Doctrine warrant dismissal of Plaintiff's strict liability claim?

**Suggested Answer:  Yes.**

3.  Does the Gist of the Action Doctrine warrant dismissal of Plaintiff's strict liability claim?

2

Suggested Answer:  Yes.

4.  Should Plaintiff's Strict Liability claim be dismissed for failure to comply with the pleading requirements of *Tincher v. Omega Flex*?

Suggested Answer:  Yes.

## IV.  LEGAL ARGUMENT

### A.    Forum Non Conveniens

*Forum non conveniens* is an equitable doctrine invoking the discretionary power of a court to decline to exercise the jurisdiction it has over a cause of action when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183 (3d Cir. 2008).  In other words, it permits a court to stay or dismiss an action even when jurisdiction and venue are technically proper.   In deciding whether to dismiss a case for *forum non conveniens*, "the ultimate inquiry is where trial will best serve the convenience of the parties and the ends of justice." *Dawes v. Publish Am. LLLP*, 563 Fed. Appx. 117 (3d Cir. 2014), *citing Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628 (3d Cir. 1989).

Although the decision to grant or deny a *forum non conveniens* motion lies within the district court's sound discretion, the court's decision "should be an exercise in structured discretion founded on a procedural framework guiding the

district court's decision making process." *Delta Air Lines, Inc. v. Chimet, S.P.A.*, 619 F.3d 288 (3d Cir. 2010). The Third Circuit has identified the following factors to guide a district court's exercise of discretion: (1) the availability of an adequate alternative forum where defendants are amenable to process and plaintiffs' claims are cognizable; (2) the amount of deference to be afforded to plaintiffs' choice of forum; (3) relevant "private interest" factors affecting the convenience of the litigants; and (4) relevant "public interest" factors affecting the convenience of the forum. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869 (3d Cir. 2013); *see also Gulf Oil Corp. v. Gilbert,* 330 U.S. 501 (1947). Here, the court must determine whether a trial in Pennsylvania would establish oppressiveness and vexation to Selip out of proportion to the plaintiff's convenience, and whether Pennsylvania is inappropriate because of considerations affecting the Court's administration of justice.

### 1.    Poland is a Suitable Alternate Forum

This Court must first determine whether Poland is an adequate alternative forum. In order to satisfy this "adequacy" requirement, the defendant must be amenable to process in the alternative forum and the subject matter of the lawsuit must be cognizable in the alternative forum so as to provide the Plaintiff with appropriate redress. *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254, n. 22 (1981); *Kultur Int'l Films, Ltd. v. Covenant Gordon Pioneer, FSP., Ltd.*, 860 F.

Supp. 1055 (D. N.J. 1994).  Inadequacy of the alternative forum is rarely a barrier to a *forum non conveniens* dismissal.  *Tech. Dev. Co. v. Onischenko*, 174 Fed. Appx. 117 (3d Cir. 2006). Both the Court of Appeals for the Third Circuit and the Supreme Court have noted that the adequacy requirement is satisfied when the defendant is "amenable to process" in the other jurisdiction.  *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 180 (3d. Cir. 1991);  *Piper Aircraft Co.*, 454 U.S. at 255-256, n. 22; *Dahl v. United Techs. Corp.*, 632 F.2d 1027 (3d Cir. 1980) (affirming *forum non conveniens* dismissal on condition that defendant consent to Norwegian jurisdiction).

Here, Selip is amenable and will submit to jurisdiction in Poland.   See Declaration of Carlo Romani attached as Exhibit B. Moreover, counsel will accept service of process on Selip's behalf.   Additionally, Selip will produce relevant documents and make witnesses available for deposition in Poland. Exhibit B.

Furthermore, Plaintiff's claims are cognizable in the Polish Courts.  A remedy is only deficient where it is so "clearly inadequate or unsatisfactory, that it is no remedy at all." *Piper Aircraft,* 454 U.S. at 254. The focus is not whether Pennsylvania would provide a more lucrative venue for Plaintiff.   Rather, the inquiry is simply whether the laws of Poland permit recovery for Plaintiff's causes of action.  Here, Poland has a sophisticated judicial system very similar to that of the United States, and allows causes of action for negligence, product liability,

breach of contract, breach of warranty and unjust enrichment, which are the subject matter of the suit. *See* the declaration of Arkadiusz Korzeniewski attached as Exhibit "B."

Poland is also suitable as the statute of limitations under Polish law for the plaintiff's causes of action have not expired. Exhibit "B." According to the Polish Civil Code, the general principle is that the Plaintiff's causes of action are governed by a three (3) year statute of limitations, which has been tolled by commencement of the instant litigation. Thus, the plaintiff has sufficient time to recommence this action in Poland, and there is no danger that Plaintiff will be deprived of any remedy or treated unfairly. See *Piper Aircraft,* 454 U.S. at 255.

Furthermore, a Polish judgment can be enforced in Pennsylvania under the Pennsylvania's Uniform Foreign Money Judgment Recognition Act, 42 P.S. §§ 22001-22009. Therefore, Poland provides adequate procedural safeguards. Moreover, the remedy available to Plaintiff in Poland is not so inadequate as to amount to no remedy at all. *See Piper Aircraft Co.,* 454 U.S. at 255, n. 22. In light of the above, it is clear that Poland is a suitable alternative forum for Plaintiff's claim.

### 2.    Deference to Plaintiff's Choice of Forum

Ordinarily, a strong presumption of convenience exists in favor of a plaintiff's chosen forum. However, this presumption may be overcome when the

balance of the public and private interests clearly favors an alternate forum. *Piper Aircraft Co.*, 454 U.S. at 255.   While residents deserve somewhat more deference than foreign plaintiffs, dismissal should not be automatically barred when a plaintiff has brought an action in the plaintiff's home forum. *Id.* If the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper. *Id.*

Importantly, if the operative facts giving rise to the complaint occurred outside of the chosen forum, then the deference owed to a plaintiff's choice of forum is reduced. See *Lynch v. Hilton Worldwide, Inc.*, 2011 U.S. Dist. LEXIS 126003 (D.N.J. 2011). In *Lynch*, the District Court dismissed a complaint filed by New Jersey plaintiffs in their home forum because the pertinent facts giving rise to the complaint occurred in London and had little connection to New Jersey. The court noted:

> All of the facts giving rise to the Plaintiffs' complaint occurred in London.  Therefore, while the Plaintiffs have sued in their home forum and this choice is given deference by the Court, this choice is not dispositive and ***the Court's deference is somewhat diminished since the operative facts giving rise to the action occurred outside of New Jersey***.

*Id.* (emphasis added).

Here, Plaintiff has commenced the action in its home forum of Pennsylvania. However, it is undisputed that all of the pertinent facts giving rise to the claim

7

arose in Poland.   In fact, the entire Complaint, beginning with the very first sentence, notes that the underlying facts occurred in Poland:

- This action arises from Selip's provision of allegedly defective FRP to ZAP in Poland. *See* Exhibit "A," ¶ 1.

- Plaintiff contracted with a Polish entity to oversee the design and purchasing of goods for the construction of a Flue Gas Desulfurization Unit to be constructed in Poland. *See* Exhibit "A," ¶ 10.

- Plaintiff contracted with Selip to design, manufacture and supply FRP to ZAP at its plant in Poland. *See* Exhibit "A," ¶¶ 12, 17, and 18.

- Selip performed repairs to the FRP at ZAP'S plant in Poland.  *See* Exhibit "A," ¶19, 21.

- Selip's product allegedly caused a shutdown of ZAP's plant and caused damage to ZAP's equipment. *See* Exhibit A, ¶¶ 23, 26, and 41.

Plaintiff's entire claim arises from allegedly defective FRP manufactured in Italy, and delivered to a Polish chemical company to be installed in its plant located in Poland.   Pennsylvania has virtually no connection to the Plaintiff's claims.   Accordingly, diminished deference should be given to the Plaintiff's choice of forum as all the pertinent facts giving rise to the claim occurred in Poland.

### 3.    Balancing Public and Private Factors

When an alternative forum has jurisdiction to hear a case, and when trial in the plaintiff's chosen forum would establish oppressiveness and vexation to a

defendant out of proportion to the plaintiff's convenience, the district court may, in the exercise of its sound discretion, dismiss the case. *Windt v. Qwest Commc'ns Int'l, Inc.*, 529 F.3d 183, 189 (3d Cir. 2008). Here, dismissal is proper as the public and private considerations clearly weigh in favor of transferring venue.

The task of balancing the private and public interest factors is essentially qualitative, not quantitative. *Lacey v. Cessna Aircraft Co.*, 932 F.2d 170, 182 (3d Cir. 1991). In *Lacey*, the Third Circuit noted that "depending on the case, some factors are 'more equal' than others." *Id.* at 180-82. Thus, while a resident plaintiff's choice of forum is accorded deference, other factors such as the location of key independent witnesses and documentary evidence may be as important as the residence of the parties.

Private interest factors are those that make trial, and the enforceability of the ensuing judgment, expeditious and relatively inexpensive, such as the ease of access to sources of proof; the availability of compulsory process to compel the attendance of unwilling witnesses; the cost of obtaining attendance of witnesses; means to view relevant premises and objects; and other potential obstacles impeding an otherwise easy, cost effective and expeditious trial. *Kisano Trade & Invest Ltd. v. Lemster*, 737 F.3d 869, 873 (3d Cir. 2013).

Public interest factors include avoidance of overburdening local courts with congested calendars; local interests in having the case tried at home; protecting the

9

interests of potential jurors so that they are not burdened to decide cases in which the local community has little concern; desire to have the forum match the law that is to govern the case; and weighing the competing interests of Pennsylvania and Poland. *See Kisano*, 737 F.3d at 873; *see also Lacey*, 932 F.2d at 180.

Here, the balance of the public and private factors tips decidedly in favor of trial in Poland, and the oppressiveness and vexation to the defendants is clearly out of all proportion to plaintiff's convenience in keeping the case in Pennsylvania.

### a.   Private Interest Factors

#### i.   Relative ease of access to source of proof

It would be very difficult, if not impossible, to access the sources of proof in this case if the matter is litigated in Pennsylvania.   All of the operative facts concerning Selip's liability and defenses are located in Poland, as are all witnesses to the alleged failure as well as physical and documentary evidence.  Exhibit C.

Furthermore, ZAP is a key and necessary party to this litigation, and their absence will detrimentally and significantly affect Selip's defense.  In addition, the use, misuse, modifications and alterations to the system are critical to the defense of this case.  Moreover, third parties retained by Plaintiff and/or ZAP are key witnesses as they performed work on Selip's Product without it's knowledge or approval.

Establishing that other parties tampered with Selip's product without its knowledge or approval is a complete defense to the Plaintiff's claims. However, it is clear that Plaintiff has no intention of bringing ZAP into this action. Selip will not be able to implead ZAP or subpoena third party witnesses as they are located in Poland and not necessarily subject to Pennsylvania's jurisdiction. In fact, every single witness that Selip will seek to call is located in Poland or Italy. Critical sources of proof would not be available if this matter is litigated in Pennsylvania. Accordingly, this factor weighs strongly in favor of dismissal.

### ii. Ability to compel unwilling, and cost of obtaining attendance of, willing witnesses.

The next step in balancing private and public factors is to examine the availability of compulsory process for attendance of unwilling and the cost of obtaining attendance of, willing witnesses.

Here, ZAP is a necessary party to this litigation, and Selip will seek to bring a third party action against ZAP or any third party entities it retained to perform work on the Product. However, upon information and belief, ZAP is a Polish domiciliary that did not maintain "continuous and systematic" contacts with Pennsylvania or minimum contacts with Pennsylvania such that it would be subject to the Personal Jurisdiction of the court. *See Mountbatten Sur. Co. v. Reagerharris Inc.*, 2000 U.S. Dist. LEXIS 333, * 11-14 (E.D. Pa. 2000); *Imo Indus. v. Kiekert*

11

*AG*, 155 F.3d 254, 259 (3d Cir. 1998); *Burger King Corp.*, 471 U.S. 462, 474 (1985).

This Court's subpoena power is limited to service within 100 miles of the place specified for trial. See *Fed R.Civ.P 45(b)*. Should this matter proceed to trial, almost all of the non-party witnesses that the defendant intends to call will be foreign residents beyond the Court's subpoena power. Accordingly, it is clear that the court lacks subpoena power over the majority of the relevant witnesses in this case as they are all in Poland or Italy. *Archut v. Ross Univ. Sch. of Veterinary Med.*, 2013 U.S. Dist. LEXIS 156024, n. 9 (D.N.J. 2013).

The nature and extent of the damages (which are allegedly catastrophic) will be a crucial issue in this litigation. Exhibit "A," ¶¶ 27 – 33. Accordingly, the parties can reasonably anticipate conducting depositions of ZAP's employees, witnesses to the accident, as well as third party repair personnel and experts hired by Plaintiff and ZAP to repair the subject facility.   However, upon information and belief, all of these potential non-party trial witnesses are residents of Poland and cannot be compelled to travel to Pennsylvania. These witnesses are crucial to Selip's case, as their testimonies will address the circumstances leading up to the accident, the condition and use of the Product, the work performed by third parties on behalf of ZAP and Plaintiff, and the subsequent damages to ZAP's facility.

Even assuming the witnesses were within this Court's subpoena power, or were otherwise willing to testify in Pennsylvania, the costs associated with obtaining the attendance of these numerous witnesses will be astronomical. Hence, if these witnesses do not voluntarily appear for testimony, any compulsory process to obtain their attendance is unavailable or prohibitively expensive.

As orderly administration of justice requires these witnesses to be present at trial, the subject action should be adjudicated in the location where these non-party witnesses reside.

### iii.    Possibility of view of premises

A view of the accident site is critical to the defense of this case. This is a products liability case stemming from the failure of a product allegedly installed into an FGD Unit in Poland. At trial, Selip will demonstrate the conditions of misuse and abuse of the Product by Plaintiff, and third parties, without Selip's knowledge or authorization, to modify and change key elements of the FGD unit. This will establish a change in the design modifications. Furthermore, Selip's expert witnesses will need to inspect the FGD Unit as well as the allegedly failed FRP. Accordingly, Poland is the only location where an inspection of the allegedly defective product and the alleged damages can be performed. Selip will be severely prejudiced at the time of trial if their experts, the court, and the finders of fact do not personally inspect the accident location.

### b.   Public Interest Factors

#### i.   Administrative difficulties flowing from court congestion.

Litigating this case in Pennsylvania will increase Court congestion and present unnecessary administrative difficulties due to the fact that the operative facts giving rise to the action occurred outside of Pennsylvania.

Poland has a sophisticated judicial system similar to that of the United States. Given the value of the plaintiff's claim, the complaint would belong to the jurisdiction of a Polish District Court.  In Poland, the District Court is typically expected to set a trial date within three to six months of when the defendant is served with a Complaint. Thereafter, even assuming 10-15 witnesses and one expert witness testify, a case can be expected to be tried within eighteen to thirty months of delivering the Statement of Claim to the defendant. See Exhibit C.

It is clear that this matter would experience minimal administrative difficulties flowing from court congestion should it be moved to Poland and would result in no prejudice to plaintiff.

#### ii.   Local interests in trying the case at home and avoiding burdening jurors

The local interest in having localized controversies decided at home "(1) should be read jointly with that of avoiding burdening jurors with cases that have no impact on their community, and (2) focuses on the nature of the dispute and the

effect that the outcome might have on the community of the local jurors." *Windt*, 544 F.Supp.2d at 423. In the subject action, Poland clearly has a strong interest in maintaining jurisdiction over foreign manufacturers whose products allegedly cause injuries in the province. Plaintiff allegedly entered into an engineering and procurement agreement with ZAP, a Polish chemical company. *See* Exhibit A, ¶ 9. Thereafter, Plaintiff contracted with Selip to design, manufacture, and supply piping for use in ZAP's plant. Plaintiff alleges that Selip's product malfunctioned, causing catastrophic damages.

As the local interest in having localized controversies decided at home focuses on the effect that the resolution of the case would have on the local community, Pennsylvania has little interest in the resolution of this case. *See Windt*, 544 F.Supp.2d at 423. While Pennsylvania may have an interest in protecting its residents from allegedly defective products, it is clear that Poland has the greater interest in deciding this matter as the accident occurred there, the allegedly defective product was installed there, and the damages were allegedly incurred there. The mere fact that Plaintiff was located in Pennsylvania at the time it contracted for work to be performed in Poland does not make this a localized controversy. Therefore, Poland has the greater interest in hearing this dispute, and this factor weighs heavily in favor of dismissal.

### iii.   Desire to have forum match the law and weighing competing interests of Pennsylvania and Poland

*Forum non conveniens* is designed to help courts avoid conducting complex exercises in comparative law. *Aircraft Co.*, 454 U.S. at 251. "[I]n resolving a *forum non conveniens* motion, the district court is not required to predict what law the foreign court would apply." *Kisano Trade & Invest Ltd.*, 737 F.3d at 879. Nonetheless, the District Courts must consider the impact of choice-of-law problems on the forum, especially as the need to apply foreign law points toward dismissal." *Lacey I*, 862 F.2d at 48.

Pennsylvania has adopted a combination of the "government interest" test and the most "significant relationship" test of Section 145 of the Restatement (Second) of Conflicts. *See Griffith v. United Air Lines, Inc.*, 203 A.2d 796 (Pa. 1964). Under this approach, a Court must evaluate the extent to which one state rather than another demonstrates, because of its policies and their connection and relevance to the matter in dispute, a priority of interest in the application of its rule of law. *Troxel v. A.I.duPont Institute*, 636 A.2d 1179, 1180 (Pa. Super. 1994).

Here, Poland has a greater interest in applying its law, as it is the forum with the most significant relationship with the parties and the contract.

### iv.  Unfairness of burdening citizens in an unrelated forum

This factor focuses on the effect that the resolution of the case would have on the local community, its citizenry and other localized considerations. *Windt*, 544 F.Supp.2d at 423.  It would be unfair to burden the citizens of Pennsylvania, an unrelated forum, with jury duty. Rather, the burden of jury duty should be placed on those having the closest ties to this action.  Here, Poland has the greatest ties to this action as the allegedly defective product was delivered there and allegedly failed there, causing damages to ZAP's facility in Poland.  The facts of this litigation have no relevance to Pennsylvania, the accident did not occur in Pennsylvania, and Plaintiff's damages were not suffered in Pennsylvania.  If this matter is not dismissed and transferred to Poland, the citizens of Pennsylvania would be improperly burdened by having to deliberate and resolve a matter that has no impact on their community.

The relevant public and private interest factors tip decidedly in favor of dismissal on the basis of *forum non conveniens*.  Moreover, the balance of interest favors the defendant to such an extent that it overcomes the diminished deference accorded by this court to the plaintiff's selection of forum.  As continuing this litigation in Pennsylvania would result in oppression and vexation out of proportion to the Plaintiff's convenience, the only rational venue for litigation of this matter is in Poland.

17

**B.    12(b)(6) motion to dismiss Plaintiff's Strict Liability Claim**

**1.    Pleading Standard**

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a pleading.    The United States Supreme Court clarified the pleading standard applicable to Rule 12(b)(6) in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007).    The Court found that a Complaint must contain "enough facts to state a claim for relief that is plausible on its face." *Id.* at 570. This requires plaintiffs to "nudge[] their claims across the line from conceivable to plausible. *Id.*    The United States Supreme Court also disavowed a well-known statement from its prior opinion in *Conley v. Gibson*, 355 U.S. 41 (1957) that a "complaint should not be dismissed … unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561.    Under *Twombly*, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support of these claims." *Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008).

The Supreme Court further clarified the pleading standard in *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and stated, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements [are] not suffice" to

defeat a Rule 12(b)(6) motion to dismiss. *Id.* at 1949.   The Court in *Iqbal* developed a two-step process for courts to follow when analyzing a motion to dismiss.   First, although "a court must accept as true all of the allegations contained in a complaint," that tenet is inapplicable to legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Second, with respect to any surviving well-pleaded factual allegations, "a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court elaborated on plausibility and stated, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 1949, *quoting Twombly*, 550 U.S. at 555.   Also, "naked assertion[s] devoid of further factual enhancement are insufficient." *Id.* at 1949, Thus, the plausibility standards requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## 2.   The Economic Loss Doctrine Warrants Dismissal of Plaintiff's Strict Liability Claim.

The economic loss doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 671 (3d Cir. 2002).   The purpose of this doctrine is to "prevent[ ] tort law from reallocating risks between parties who fairly have negotiated an arms-length contract." *Werwinski*, 286 F.3d. at 679.   Moreover, the

economic loss doctrine limits plaintiffs to their contract claims "when loss of the benefit of a bargain is the plaintiff[s'] sole loss." *Bohler--Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 104 (3d Cir. 2001).

To avoid application of the doctrine, a plaintiff must articulate "harm that is distinct from the disappointed expectations evolving solely from an agreement." *Sunburst Paper, LLC v. Keating Fibre Int'l, Inc.*, 2006 U.S. Dist. LEXIS 78890, * 11 (E.D. Pa. 2006). A plaintiff may not pursue a strict liability claim "in an action between commercial enterprises involving a product that malfunctions where the only resulting damage is to the product itself." *REM Coal Co. v. Clark Equip. Co.*, 563 A.2d 128, 129 (Pa.Super. 1989); *Palco Linings, Inc. v. Pavex, Inc.*, 755 F. Supp. 1269, 1276 (M.D. Pa.1990) (Economic losses are defined as damages "for inadequate value, costs of repair and replacement of the defective product, or consequential loss of property, without any claim of personal injury or damage to other property").

Here, Plaintiff did not claim the Product caused any personal injuries. In fact, Plaintiff specifically alleges only that it suffered economic losses that arise from the contract. Consequently, Count I of the Complaint should be dismissed because Plaintiff's strict liability claim is barred by the economic loss doctrine.

### 3.    Gist of the Action Doctrine

The gist of the action doctrine "precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." *eToll Inc., v. Elias/Savion Adver.*, 811 A.2d 10, 14 (Pa. Super. 2002). Under this doctrine tort claims are precluded that:

> (1) aris[e] solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract.

*Id.* at 19.

The difference between "a breach of contract claim and a tort claim is that the former arises out of 'breaches of duties imposed by mutual consensus agreements between particular individuals,' while the latter arises out of 'breaches of duties imposed by law as a matter of social policy.'" *Erie Ins. Exch. v. Abbott Furnace Co.*, 972 A.2d 1232, 1238 (Pa. Super. 2009) (In determining whether the gist of the action is in tort or contract, the test is "concerned with the nature of the action as a whole). **Strict liability claims that stem from an alleged breach of a contract are barred by the gist of the action doctrine.** *Dipietro v. Glidewell Labs.*, 2011 U.S. Dist. LEXIS 128964 *4 (M.D. Pa. 2011) (emphasis added).

In the present matter, Plaintiff's strict liability claim arises from Selip's contractual obligations and its alleged violation of these duties. Moreover, this claim is specifically barred by *Depietro*. Hence, Count I of the Complaint should

be dismissed because Plaintiff's strict liability claim is barred by the gist of the action doctrine.

**4.    Count I Does Not Explain Whether the Strict Liability Claim is Based Upon the Consumer Expectations Test or Risk-Utility Theory.**

In *Tincher v. Omega Flex*, 104 A.3d 328 (Pa. 2014), the Pennsylvania Supreme Court stated that a plaintiff in a strict liability action must allege in the complaint "sufficient facts to make a prima facie case premised upon either a 'consumer expectations' or 'risk utility' theory, or both." *Id.* at 406. The Complaint here fails to allege whether Plaintiff intends to pursue its strict liability claim based upon the consumer expectations or risk utility theory as required by *Tincher*. *See* Exhibit "A." Hence, Count I of the Complaint should be dismissed.

## V. <u>CONCLUSION</u>

Based upon the foregoing, Selip requests this Honorable Court to enter the attached Order dismissing this matter. In the alternative, Plaintiff's claim for strict liability should be dismissed.

Date: <u>April 15, 2015</u>

Respectfully submitted,

**GOLDBERG SEGALLA LLP**

*/s Matthew R. Shindell*
Matthew R. Shindell, Esq.
Attorney for Defendant

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES | : | Case No. 1:15-cv-00269 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SELIP S.P.A., | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF SERVICE

I, Matthew R. Shindell, hereby certify that a true correct copy of Defendant's brief in support of its motion to dismiss was served upon all counsel of record on April 15, 2015 via ECF filing.

Date: <u>April 15, 2015</u>      **GOLDBERG SEGALLA LLP**


     <u>/s Matthew R. Shindell</u>
     Matthew R. Shindell, Esq.

3642081v1

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES | : | Case No. 1:15-cv-00269 |
|  | : |  |
| Plaintiff, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| SELIP S.P.A., | : |  |
|  | : |  |
| Defendant. | : |  |

## CERTIFICATE OF WORD COUNT

I, Matthew R. Shindell, hereby certify Defendant's brief in support of its motion to dismiss has a word count of 4,997.

Date: <u>April 15, 2015</u>      **GOLDBERG SEGALLA LLP**


_/s Matthew R. Shindell_
Matthew R. Shindell, Esq.

"A"

JS 44  (Rev 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Marsulex Environmental Technologies

## DEFENDANTS
Selip S.P.A.

**(b)** County of Residence of First Listed Plaintiff    Lebanon
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Italian Corporation
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Jennifer Dempsey, Drinker Biddle & Reath LLP, One Logan Square, Ste. 2000, Philadelphia, PA 19103.  Phone - (215) 988-2551

Attorneys *(If Known)*
Unknown

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ☐ 1  U.S. Government Plaintiff | ☐ 3  Federal Question *(U.S. Government Not a Party)* |
| ☐ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                                    *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☒ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☒ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☒ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

| | | | | | |
|---|---|---|---|---|---|
| ☒ 1 Original Proceeding | ☐ 2 Removed from State Court | ☐ 3 Remanded from Appellate Court | ☐ 4 Reinstated or Reopened | ☐ 5 Transferred from Another District *(specify)* | ☐ 6 Multidistrict Litigation |

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. § 1332(a)

Brief description of cause:
Breach of contract related to defective piping supplied by defendant.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $    600,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions)*:

JUDGE _____    DOCKET NUMBER _____

DATE
02/06/2015

SIGNATURE OF ATTORNEY OF RECORD
*Jennifer B. Dempsey*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# UNITED STATES DISTRICT COURT
for the
## MIDDLE DISTRICT OF PENNSYLVANIA

**MARSULEX ENVIRONMENTAL TECHNOLOGIES**

*Plaintiff*

v.

**SELIP S.P.A.**

*Defendant*

Civil Action No.: **1:15-CV-00269-YK**
Hon. Yvette Kane

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

SEE COMPLAINT

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) ――― or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) ――― you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

> Jennifer Burke Dempsey
> Drinker Biddle & Reath LLP
> One Logan Square
> Suite 2000
> Philadelphia, PA 19103

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.



**MARIA E. ELKINS**

*CLERK OF COURT*

**s/ – Victoria Yinger**

*Signature of Clerk or Deputy Clerk*

**ISSUED ON 2015-02-06 14:32:58.0, Clerk USDC MDPA**

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES,<br><br>Plaintiff,<br><br>v.<br><br>SELIP S.P.A.,<br><br>Defendant. | Case No.<br><br>COMPLAINT<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marsulex Environmental Technologies ("MET") alleges as follows for its Complaint against Selip S.p.A. ("Selip").

## NATURE OF THE ACTION

1.     This action arises from Selip's provision of defective External Fiberglass Reinforced Recycle Piping ("FRP piping") to one of MET's customers in Poland.  The FRP piping Selip designed, manufactured, and supplied was deficient in a number of ways.  Among other things, the piping's flanges failed to include layers required by the project's specifications, the piping's flanges were not made integrally as one piece on a mold, and the piping was poorly bonded.  Shortly after MET's customer began using Selip's FRP piping, the piping started to crack.  MET and its customer warned Selip several times about the problems with

the FRP piping. Selip, however, failed to adequately repair the piping in contravention of its obligations under its contract with MET. The defects eventually resulted in the catastrophic failure of the piping and forced the shutdown of the plant in which the piping was used thus causing damage to MET's reputation in the air pollutant control industry. Further, the piping's complete failure caused MET to incur significant costs to replace Selip's defective FRP piping.

2.      MET brings this action against Selip for strict liability–manufacturing defect, breach of contract, breach of express warranty, breach of implied warranty, and unjust enrichment based on Selip's failure to manufacture and supply FRP piping free from material defects and in accordance with the specifications set forth in the parties' contract.

## PARTIES

3.      MET is a Delaware corporation having its principal place of business at 200 North Seventh Street, Lebanon, Pennsylvania. MET was founded in 1934 and offers a number of services to industrial customers to assist in their control of air pollution.

4.      Selip is an Italian corporation having its principal place of business at Via Provinciale, 36, I-43012, Fontanellato, Parma, Italy. Selip manufactures advanced composite materials including FRP piping.

2

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332.

6.      Selip is subject to this Court's personal jurisdiction because it purposefully directed activities relevant to this action at MET and caused injury to MET within this Commonwealth, by acts and omissions committed inside and outside of this Commonwealth.  Selip negotiated and entered into the contract at issue knowing that MET was headquartered in Pennsylvania.  Further, Selip and MET engaged in numerous correspondence regarding the contract from 2010 to the Fall of 2014.  At all times, Selip knew that it was corresponding with individuals located at MET's Pennsylvania headquarters.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b).  A substantial part of the events giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

8.      MET provides air quality control systems that minimize the emission of air pollutants.

9.      On or around January 22, 2010, MET entered into an engineering and procurement agreement with Zaklady Azotowe "Pulawy" S.A. ("ZAP"), a Polish chemical company that specializes in the manufacturing of fertilizer.

3

10.     The agreement between MET and ZAP required, in part, MET to oversee the design and purchasing of goods for the construction of a  Flue Gas Desulfurization Unit ("FGD Unit") to be constructed at ZAP's chemical plant in Poland.

11.     The environment inside FGD Units is highly corrosive.  Based on MET's past experience dealing with the environment inside FGD Units, MET determined that the FGD Unit would require FRP piping.

12.     On or around June 21, 2010, MET entered into a contract with Selip in which Selip agreed to design, manufacture, and supply External FRP Recycle Piping for use in the construction of the FGD Unit at ZAP's plant.

13.     The contract required Selip to, among other things, fabricate the FRP piping in accordance with Selip's recommended procedures and all approved drawings.

14.     The contract also required that the inner and outer surfaces of the FRP piping be "free of cracks."  Ex. A, Specification for Absorber External FRP Recycle Piping at ¶ 4.4.

15.     Further, Selip warranted that the equipment provided pursuant to the contract "will be properly and professionally constructed, will meet the technical requirements of the Purchase Order including the standards and regulations as well as the best engineering practices.  The equipment will be new and unused, of the

4

specified material, free of defects and fit for the application specified." Ex. B,

Supplementary Terms and Conditions for Zaklady Azotowe "Pulawy" Project at

¶ 5.

16.     Moreover, Selip warranted that the FRP piping would be "of

merchantable quality, free from all defects in design, workmanship and materials,

and will be fit for the particular purposes for which they are purchased and that the

goods are provided in strict accordance with the specification, samples, drawings,

designs or other requirements (including performance specification) approved or

adopted by [MET]." Ex. C, Marsulex Purchase Order Terms and Conditions

¶ 10(b).

17.     On or around February 3, 2011, Selip delivered the FRP piping to

ZAP's plant.

18.     Thereafter, the FGD Unit was completed and ZAP began operating

the FGD Unit on or around October 2012.

19.     Only a few months later, on or around January 2013, Selip was

notified that there already were cracks in the FRP piping.  Selip examined the FRP

piping at ZAP's plant and acknowledged there were cracks in the piping.  Selip,

however, classified the cracks as "superficial" and filled them with resin.  In

reality, the cracks were an early warning sign that Selip's FRP piping was

defective, and Selip's hasty repair did nothing to correct the underlying problems.

20.     On or around September 16, 2013, Selip was notified that new cracks were identified in the FRP piping.  The identification of even more cracks in the piping demonstrated that the problems with the piping were significant and the piping was continuing to deteriorate.

21.     The FRP piping continued to crack.  On April 8, 2014, Selip went to ZAP's plant to examine the cracking in the FRP piping.  Again, Selip acknowledged there were cracks in the FRP piping.  At this time, Selip stated that it would provide support and assistance to repair the cracks.  However, contrary to the parties' agreement, Selip stated that all costs for its assistance to repair its defective piping would be charged to MET or ZAP.

22.     There was a serious malfunction on the FGD Unit caused by the failure of the FRP piping on or around May 31, 2014.  ZAP informed MET of this failure on June 2, 2014 and MET informed Selip of this issue the same day.

23.     MET sent Selip photographs of the FRP piping's failure and resulting damage at ZAP's plant the next day.  The photographs show that the FRP piping essentially exploded and tore apart causing structural damage to ZAP's pumping station facility.

24.     MET informed Selip that it was ZAP's understanding that the failure was caused by a deficiency in Selip's design and manufacturing of the FRP piping.

MET requested that Selip dispatch someone to ZAP to examine the piping and determine why it failed.

25.     Selip refused to send someone to ZAP's plant to examine the FRP piping.

26.     The failure of the FRP piping caused the complete shutdown of ZAP's plant for about three months.

27.     To repair the FGD Unit, MET was forced to replace, at MET's expense, the failed Selip FRP piping with piping from another manufacturer.

28.     After the failure of the FGD Unit, MET hired a third party expert (the "Expert") to investigate the failure of Selip's FRP piping.

29.     The Expert evaluated cross-sections from samples of Selip's failed FRP piping.  The Expert evaluated the piping's construction via visual inspection and a modified loss on ignition test – also referred to as a burn test.

30.     The Expert concluded that the FRP piping supplied by Selip was poorly constructed because Selip used low strength reinforcement and non-structural components in the flange area of the piping.  Further, the Expert concluded that the flanges in the piping did not meet the design and fabrication requirements of Selip.

31.      The Expert's tests revealed that the woven roving layers that were required by Selip's working procedures were not used in the flange section of the

FRP piping thus resulting in a weak pipe that could not handle the stress the pipe was intended to handle.

32.    The Expert's tests also revealed that the FRP piping included flange areas that had joints and were not made essentially from one piece as depicted in Selip's drawings and working procedures.  Selip's use of flanges with joints reduced the overall flange strength because a joint crevice was located directly behind the point of high stress in the flange hub.

33.    Further, the testing showed that there were instances of poor secondary bonding.

34.    On or around September 24, 2014, MET informed Selip that there were manufacturing defects in the FRP piping and that it was not manufactured in accordance with the parties' contract, Selip's working procedures, and Selip's design.

35.    Moreover, Selip failed to manufacture sections of the piping's flange areas in conformity with standard industry practice given that Selip prepared the piping's flanges with a non-structural short segment of pipe placed behind the flange extending the length of the elbow rather than laying-up the flange directly onto the end of the elbow.  As a result, Selip's FRP piping was not fit for its intended use.

36.     MET requested payment from Selip, in the amount of $557,873.53 for the replacement pipes and other services MET was forced to render as a result of Selip's defective FRP piping.

37.     On or around October 29, 2014, Selip rejected MET's request for payment.

## COUNT I
### (Strict Liability – Manufacturing Defect)

38.     MET realleges and incorporates by reference the allegations set forth in paragraphs 1–37 above.

39.     Selip's FRP piping was defective when it left Selip's facility because it was not manufactured in accordance with the parties' contract, Selip's working procedures, the project's design specifications, and all MET approved drawings.

40.     The FRP piping was defective because it failed to include woven roving layers in the piping's flanges, the piping's flange construction was not made integrally as one piece on a mold, and it was poorly bonded.

41.     The FRP piping's defective condition was directly responsible for the piping's failure in the FGD Unit at ZAP's plant.

42.     As a direct and proximate result of Selip's defective FRP Piping, MET was caused to suffer the aforesaid injuries and damages.

## COUNT II
### (Breach of Contract)

43.    MET realleges and incorporates by reference the allegations set forth in paragraphs 1–42 above.

44.    On or around June 21, 2010, MET and Selip entered into a contract that required Selip to design, manufacture, and supply FRP piping in accordance with Selip's working procedures, specifications set forth by MET, and all drawings and other designs approved by MET.

45.    Selip failed to provide FRP piping in accordance with the parties' contract.

46.    As a direct and proximate result of Selip's breach, MET was caused to suffer the aforesaid injuries and damages.

## COUNT III
### (Breach of Contract)

47.    MET realleges and incorporates by reference the allegations set forth in paragraphs 1–46 above.

48.    On or around June 21, 2010, MET and Selip entered into a contract that required Selip to take all necessary action, at Selip's expense, to remedy any flaws or defects in its FRP piping.  Further, the contract permitted MET to take steps to remedy any flaws or defects in Selip's piping if Selip failed to do so and Selip agreed to reimburse MET for all expenses, including but not limited to,

material and labor costs expended by MET to repair or replace malfunctioning or nonconforming piping.

49.     When notified of defects in the FRP piping, Selip failed to remedy the defects.  Further, Selip failed to reimburse MET for its replacement of Selip's defective FRP piping.

50.     As a direct and proximate result of Selip's breach, MET was caused to suffer the aforesaid injuries and damages.

<u>COUNT IV</u>
**(Breach of Express Warranty)**

51.     MET realleges and incorporates by reference the allegations set forth in paragraphs 1–50 above.

52.     Selip expressly warranted that the FRP piping would be "free of defects and fit for the application specified."  Selip further warranted that the piping would be "of merchantable quality, free from all defects in design, workmanship and materials, and will be fit for the particular purposes for which they are purchased and that the goods are provided in strict accordance with the specification, samples, drawings, designs or other requirements (including performance specification) approved or adopted by [MET]."

53.     Selip's FRP piping did not conform to these express representations because it was not free from defects, it was not fit for the particular purpose for which it was purchased, and it was not manufactured in accordance with the

specification, samples, drawings, and designs approved by MET.

54.     As a direct and proximate result of MET's use of Selip's FRP piping, MET was caused to suffer the aforesaid injuries and damages.

## COUNT V
### (Breach of Implied Warranty)

55.     MET realleges and incorporates by reference the allegations set forth in paragraphs 1–54 above.

56.     At the time Selip contracted to supply MET FRP piping for the ZAP project, Selip knew MET intended to use the FRP piping for construction of a FGD Unit and impliedly warranted its piping to be (a) safe and fit for this particular purpose; and (b) merchantable or fit for the ordinary purposes for which FRP piping is used.

57.     MET reasonably relied on the skill and judgment of Selip as to whether its FRP piping was safe and fit for its intended use.

58.     Contrary to such implied warranties, Selip's piping was not fit for ordinary use, as there were numerous defects, such as the failure to incorporate a woven roving layer into the piping's flanges, which rendered the piping unfit for use and below commercial standards.  Selip's FRP piping was also not fit for the particular purpose communicated to Selip as it failed to withstand the highly corrosive nature of the FGD Unit.

59.    As a direct and proximate result of MET's use of Selip's FRP piping, MET was caused to suffer the aforesaid injuries and damages.

**COUNT V**
**(Unjust Enrichment)**

60.    MET realleges and incorporates by reference the allegations set forth in paragraphs 1–59 above.

61.    Selip has been enriched because it was paid for the FRP piping that did not have any value for MET.  The piping did not have the properties Selip claimed it had, and the piping did not meet minimum manufacturing standards.

62.    Permitting Selip to profit from its false representations and flawed manufacturing standards at the expense of MET would be unconscionable.

## PRAYER FOR RELIEF

WHEREFORE, MET respectfully requests that this Court grant Judgment in favor of MET and against Selip for compensatory damages, reasonable attorneys' fees, costs of this suit, interest at the legal rate, and such other and further relief the Court deems proper.

Dated:  February 6, 2015          By:  s/ Jennifer Dempsey

Jennifer Dempsey
DRINKER BIDDLE AND REATH LLP
One Logan Square, Ste. 2000
Philadelphia, PA  19103
Telephone:  (215) 988-2551
Facsimile:  (215) 988-2757
Jennifer.Dempsey@dbr.com
PA309164

*Counsel for Plaintiff Marsulex*
*Environmental Technologies*

14

"B"

# UNITED STATES DISTRICT COURT

## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES, | ) ) ) | CIVIL ACTION NO. 1:15-CV-00269 |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| SELIP S.P.A., | ) ) | |
| Defendant. | ) ) ) | |

## AFFIDAVIT OF ARKADIUSZ KORZENIEWSKI IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Pursuant to Title 28 U.S.C. § 1746(1), I, Arkadiusz Korzeniewski, hereby declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge.:

1.     I am an attorney and a partner of a litigation department with the law firm of CMS Cameron McKenna Greszta i Sawicki sp.k. ("CMS") in Warsaw, Poland, duly licensed to practice before the District Courts of Poland.  As such, I have personal knowledge of the facts and matters hereinafter deposed to, save and except where the same are stated to be based on information and belief, and where so stated I believe the same to be true.

1

2.     The facts stated in this declaration are known to me of my own personal knowledge, and/or are contained in plaintiff's complaint, and/or are based on documents contained in my file on this matter, and/or are based on discussions with counsel and/or defendants, and if called upon to testify to these facts, I could and would competently do so.

3.     This is a product liability action brought by plaintiff Marsulex Environmental Technologies ("MET"), against Selip S.P.A ("Selip"), arising out of an accident that allegedly occurred at Zaklady Azotowe Pulawy, S.A. ("ZAP") facility in Pulawy, Poland on May 31, 2014 as pleaded in the complaint. MET claims to have contracted with Selip for the delivery of External Fiberglass Reinforced Recycle Piping ("FRP Piping") to be used in the construction of a Flue Gas Desulfurization Unit ("FGD Unit") at ZAP's facility in Pulawy, Poland. MET asserts claims of manufacturing defect, breach of contract, breach of express and implied warranties and unjust enrichment as a result of the accident and seeks $600,000 in damages.

4.     Plaintiff, a resident of Pennsylvania, has sued the defendants in Pennsylvania for general negligence, strict products liability, breach of contract and breach of warranties. As outlined in detail in Selip's Motion to dismiss, Pennsylvania is an inconvenient forum, and Poland is the more appropriate forum for plaintiff's claims.

5.      Poland has a sophisticated judicial system similar to that of the United States. Given the nature and potential value of the plaintiff's claim, the complaint would belong to the jurisdiction of a Polish District Court (*sąd okręgowy*). In Poland, the District Court is typically expected to set a trial date within 3-6 (three to six) months of when the defendant is served with the Statement of Claim (Complaint). Thereafter, even assuming 10-15 witnesses and one expert witness testify, a case can be expected to be tried within eighteen to thirty months of delivering the Statement of Claim to the defendant.

6.      Article $1103^7$ of the Polish Code of Civil Procedure allows causes of action for negligence, product liability, breach of contract, breach of warranty and unjust enrichment, which are the subject matter of plaintiff's suit.

7.      Pursuant to Article $1103^7$ of the Polish Code of Civil Procedure (hereinafter "CoCP"), courts in Poland would have jurisdiction to hear the causes of action alleged by Plaintiff in its complaint.  The statute reads as follows:

Article $1103^7$. Cases adjudicated by trial other than those referred to in Article $1103^1$-$1103^6$ also fall under domestic jurisdiction if they concern:

1) Obligations arising from an act in law which were performed or are or were to be performed in the Republic of Poland;
2) Obligations other than those arising from an act in law which were incurred in the Republic of Poland;
3) The operation of the defendant's unit or branch located in the Republic of Poland;
4) Claims involving property rights, if the defendant has property in the Republic of Poland or is entitled to property rights in the

3

Republic of Poland of major value compared to the value of the matter at issue;

5) A matter at issue located in the Republic of Poland;

6) The estate of a person who at the time of death was domiciled or had his/her habitual residence in the Republic of Poland.

8.    Generally speaking, Article 1103[7] sec. 1 refers to contractual obligations which were or are to be performed in Poland.  Moreover, Article 1103[7] sec. 2 refers to tort liability, if a civil wrong was committed or the loss was suffered in Poland.  In addition, it covers unjust enrichment.  Accordingly, a Polish court will have jurisdiction under each of the Plaintiff's causes of action, regardless of whether the defendant is sued for breach of contract, tort liability (including products liability), or unjust enrichment.

9.    According to the Polish Civil Code (Act of 23 April 1964 Civil Code), the general principle is that the Plaintiff's causes of action are governed by a three (3) year statute of limitations. According to Article 123 sec. 1(1) of the Civil Code, the statute of limitations is tolled if the plaintiff commences a litigation before a court to pursue this claim.  Articles 118 and 120 of the Polish Civil Code, which apply to contractual liability and unjust enrichment state as follows:

**Article 118**. Unless a specific provision provides otherwise, the period of limitation shall amount to ten years, and for periodical payments' claims as well as for claims connected with conducting professional activity - it shall be three years.

**Article 120**. § 1. The course of limitation shall commence on the day when the claim became mature. Where the maturity of the claim depends on undertaking a specified act by the entitled person, the

4

course of the time limit shall commence on the day when the claim would have become mature if the entitled person undertook the act at the earliest possible opportunity.

§ 2. The course of limitation of claims for refraining from acting shall commence on the day when the one against whom a claim is to be pursued failed to comply with the content of the claim.

10.   Article 442$^1$ of the Polish Civil Code, which pertains to Torts, and covers the plaintiff's remaining causes of action, states as follows:

**Article 442$^1$.** § 1. A claim for the redress of the damage inflicted by a delict shall be subject to limitation upon the lapse of three years from the day when the injured party learned about the damage and about the person liable to redress it. However, such a time limit may not be longer than ten years from the day when the event causing the damage occurred.

§ 2. Where the damage resulted from a crime or an offence, a claim for the redress of the damage shall be subject to limitation upon the lapse of twenty years from the day when the offence was committed regardless of when the injured party learned of the damage and of the person obliged to its redress.

§ 3. In the case of inflicting injury to a person limitation may not end earlier than upon the lapse of three years from the day when the injured party has learned about the injury and the person obliged to redress it.

§ 4. Limitation of a minor's claims for redress of the injury to a person may not end earlier than upon the lapse of two years from becoming of full age.

11.   Article 123 of the Polish Civil Code, which pertains to the interruption of the statute of limitations, states as follows:

**Article 123.** § 1. The course of limitation shall be interrupted:

5

1) by any act before a court of law or other authority appointed to try cases or to enforce claims of a given kind or before an arbitration court, which activity is taken up directly to pursue or to establish or to satisfy or to secure a claim;

2) by the acknowledgement of a claim by a person against whom the claim may be pursued;

3) by initiating mediation.

§ 2. (deleted)

Upon my information and belief, Article 123 Section 1(1) of the Polish Civil Code would have the effect of tolling the statute of limitations relative to the plaintiff's claims.

12.    Good cause exists to find that Pennsylvania is an inconvenient forum and that the proper forum is the Circuit Court of Poland:

- The incident took place in Poland; any putative witnesses reside in Poland; ZAP is an indispensable party and a resident of Poland who upon information and belief has no minimum contacts with Pennsylvania; the subject FRP Piping was installed in Poland; all repair providers and their records are located in Poland; and the accident scene (which must be examined) is located in Pulawy, Poland.

- Most, if not all of the relevant documentary evidence that the defendants will seek to obtain is located in Poland, including books and records relating to any knowledge of prior incidents, remedial measures, material outlining the extent of the damage, repair records, invoices, log in sheets, and contracts with third parties.

- All physical evidence regarding the failed FRP Piping which will have to be examined and tested is located in Poland

- It will be burdensome and expensive for defendant to engage in international discovery, particularly as it relates to depositions and subpoenas of witnesses.

6

- Polish witnesses cannot be compelled to appear in Pennsylvania for depositions or trial.

- The subject FRP Piping was designed and manufactured in Italy, and was not distributed or serviced in Pennsylvania.

- The complaint does <u>not</u> allege that the subject product was, purchased, sold or installed in Pennsylvania, or that the subject product ever underwent any repairs, servicing, maintenance, modifications, or alterations in Pennsylvania. It was not.

- There is no contract or agreement requiring that this litigation be brought in Pennsylvania.

- Pennsylvania has no interest in interpreting the law of a foreign jurisdiction. By contrast, the courts of Poland have a strong interest in maintaining jurisdiction over foreign manufacturers whose products cause injuries in Poland.

- This motion is brought at the very outset of this litigation. No discovery has taken place.

13.     Defendant will agree to submit to the jurisdiction of the District Court of Poland for this action, subject to service of judicial process giving defendant notice of any action commenced in Poland. Moreover, Goldberg Segalla LLP will accept service of process on Selip's behalf. Further, defendant will produce relevant documents and make witnesses available for deposition in Poland. Defendant will also agree to participate in reasonable, relevant and non-privileged discovery in Poland, if necessary, and will produce its employees for depositions and trial in Poland, to the extent that such actions are necessary, required and reasonable.

Warsaw - 23249896.4

I declare under penalty of perjury that the foregoing is true and correct.

Executed by me this <u>14</u> day of April, 2015 in Warsaw.


Arkadiusz Korzeniewski
Partner
**CMS Cameron McKenna**
**Greszta i Sawicki sp.k.**

8