Richard E. Coe
215-988-3393 Direct
215-988-2757 Fax
richard.coe@dbr.com

September 13, 2018

**VIA ECF**

The Honorable Susan E. Schwab
United States District Court
   Middle District of Pennsylvania
228 Walnut Street
Harrisburg, PA  17101

Re:   *Marsulex Environmental Technologies Corp. v. Selip S.P.A.*,
         Case No. 1:15-cv-00269

Dear Judge Schwab:

I write on behalf of Plaintiff Marsulex Environmental Technologies Corporation ("MET") in the above-captioned action.  In accordance with Your Honor's procedures, MET writes to request Your Honor's permission to file a Motion for Sanctions against Defendant Selip S.P.A. ("Selip") due to Selip's unabashed discovery abuses and repeated failures to comply with this Court's discovery Orders.

This case involves straightforward claim that Selip failed to manufacture piping in accordance with its own design and drawings, but Selip has dragged out this litigation unnecessarily for three and half years without even reaching the summary judgment stage.  Throughout the discovery process, Selip's actions have made clear that its strategy is to prolong this action as long as possible in the hopes that MET's attorneys' fees will outweigh any recovery.

Selip's conduct has resulted in significant prejudice to MET.  After years of attempting to work with Selip to remedy its deficient documents production, and multiple orders from this Court ordering Selip to comply with its discovery obligations, it is apparent that Selip has no intention of following the discovery rules and sanctions are warranted.  Pursuant to Federal Rule of Civil Procedure 37, MET has grounds to move this Court for an order:  (1) requiring Selip to pay all costs and attorneys' fees incurred by MET in compelling discovery; (2) entering a default judgment against Selip for its violations of the Court's discovery orders; or (3) as an alternative to default judgment, precluding evidence related to Selip's defense that the FRP piping at issue would have failed even if it had been manufactured in accordance with MET's specifications and Selip's design.

The Honorable Susan E. Schwab
September 13, 2018
Page 2

**Background**

      Almost three years ago, on October 14, 2015, MET served its First Set of Interrogatories and First Set of Requests for the Production of Documents (the "Discovery Requests") on Selip via First Class Mail.  Ex. A, Oct. 14, 2015 Letter from C. Piccolo to M. Shindell.  In line with the straightforward nature of its claims, MET's Discovery Requests were limited in number and scope, and contained only five interrogatories and ten requests for production.  On December 1, 2015, it was ordered that the parties respond to the discovery that was previously propounded and all other discovery be stayed pending the resolution of Selip's motion to dismiss.  Selip served responses to the Discovery Requests (the "Discovery Responses") on December 8, 2015.  *See* Ex. B, Def.'s Disc. Responses.  Selip's Discovery Responses, however, contained a number of deficiencies that MET has brought to Selip's attention on numerous occasions.

      After the discovery stay was lifted, Christian E. Piccolo, counsel for MET, sent an email to Matthew R. Shindell, former counsel for Selip, on June 24, 2016 outlining deficiencies in seven of Selip's Discovery Responses and requesting that Selip provide more specific answers to those requests.  *See* Ex. C, June 24, 2016 Email from C Piccolo to M. Shindell.  For example, in Request for Production No. 1, MET requested "[a]ll documents relating to the June 2010 FRP piping, including any communications with MET or ZAP regarding the June 2010 FRP piping . . . ."  because Selip's production only included a handful of emails.  Ms. Piccolo requested that Selip produce all electronic correspondence Selip has regarding the June 2010 FRP piping.  *Id.*

      On June 30, 2016, Selip filed a motion to dismiss the amended complaint and again discovery was placed on hold.  The Court ruled on Selip's motion to dismiss the amended complaint on March 27, 2017 and referred the case to mediation on April 6, 2017.  In an Order dated June 12, 2017, the Court cancelled all pretrial and trial deadlines pending the conclusion of mediation.  On September 21, 2017, Selip's CEO, Carlo Romani, informed representatives of MET that mediation was not likely to be productive.  An amended case management order was entered on October 26, 2017.

      On January 11, 2018, following Selip's replacement of its counsel, a deficiency letter (the "Deficiency Letter") was sent to Michael D. Brophy, counsel for Selip, requesting that Selip remedy its outstanding discovery deficiencies by January 19, 2018.  *See* Ex. D, Jan. 11, 2018 Letter from R. Coe to M. Brophy.  MET also served notices of deposition on three Selip employees.  On January 18, 2018, the parties met in person to discuss the Deficiency Letter.  During this meeting, Mr. Brophy represented that Selip was likely in possession of additional documents responsive to the Discovery Requests and that Selip would produce such documents.

The Honorable Susan E. Schwab
September 13, 2018
Page 3

On February 7, 2018, an email was sent to Mr. Brophy confirming MET's understanding that Selip planned to produce additional documents and inquiring as to the date when the documents were to be produced. *See* Ex. E, Feb. 7, 2018 Email from L. Michelen to M. Brophy. MET stated that it might be required to file a motion with the Court if the documents were not produced in a timely manner. *Id.* Mr. Brophy responded on February 8, 2018 and confirmed that Selip was in possession of additional responsive documents. *Id.* Mr. Brophy also requested that Selip be granted until February 16, 2018 to provide a more detailed response to the Deficiency Letter. *Id.* MET agreed to that deadline. *Id.*

After not receiving a response from Selip by the new deadline, MET sent a follow-up email to Mr. Brophy on February 20, 2018, inquiring when the additional documents would be produced. *See* Ex. F, Feb. 20, 2018 Email from L Michelen to M. Brophy. Mr. Brophy responded and requested that Selip have until March 2, 2018 to produce the additional documents and respond to the Deficiency Letter. *Id.*

On March 12, 2018, MET emailed Mr. Brophy again and requested an update on Selip's efforts to comply with its outstanding discovery obligations. Ex. G, Mar. 12, 2018 Email from L. Michelen to M. Brophy. The email informed Mr. Brophy that, due to the impending discovery deadline, MET would file a motion to compel if it did not receive a response to its Deficiency Letter by March 16, 2018. *Id.* On March 13, 2018, the parties had a call to discuss MET's intention to file a motion to compel. MET did not receive any updates from Selip after the March 13, 2018 call.

On March 23, 2018, Richard Coe, counsel for MET, submitted a letter to the Court in lieu of a motion to compel in accordance with the Court's procedures. Ex. H, Mar. 23, 2018 Letter from R. Coe to Judge Schwab. After an April 13, 2018 status conference to address the discovery dispute, the Court ordered Selip to supplement its document production by April 26, 2018.

On April 25, 2018, Selip made a "new" production of documents. However, Selip, for the most part, merely recycled its prior production and only produced four new documents, all of which were already in MET's possession.

On May 24, 2018, a deposition of Mr. Romani was held. During the deposition, Mr. Romani confirmed that Selip ignored its discovery obligations and was in the possession of additional responsive document it has not yet produced. *See* Ex. I, Romani Dep. at 79:21-81:16; 114:20-115:14. Among other things, Mr. Romani testified that Selip's quality management department conducted an investigation and issued a report related to the piping failure but that report was "internal documentation" and did not need to be shared with customers like MET (or apparently produced in discovery). *Id*. at

The Honorable Susan E. Schwab
September 13, 2018
Page 4

79:21-81:16. Shockingly, during this portion of his testimony, Mr. Romani explicitly stated that he purposefully withheld this report:

> Q: And was there a report generated, was it Mr. De Girgio?
>
> A: Yes.
>
> Q: Would it be different than this report?
>
> A: Oh, yes. **It's an internal documentation that we do not have to share with customers or suppliers**. It's about our quality internal management system. But as I told you before, that happens when we recognize something wrong within the supply; not in this case. If we made it is because of the wide case that this claim took within Selip. **So that's why I said it might be available or not because it is discretionally** [sic].

*Id.* (emphasis added).

Mr. Romani further testified that such a report was generated because of "the wide case that this claim took within Selip," confirming that the FRP piping failure in this case was the subject of intense discussion at Selip. *Id.*

On May 31, 2018, the parties met and conferred regarding discovery and MET sent an email to Selip's counsel following up on several deficiencies in Selip's production identified during Mr. Romani's deposition. MET identified six categories of deficiencies in Selip's document production, including Selip's internal communications, the report from Selip's internal investigation of the incident, and certain calculations Mr. Romani referenced in his depositions. *See* Ex. J, May 31, 2018 Email from R. Coe to M. Brophy. On June 7, 2018, MET's counsel responded to an email from Selip's counsel about the MET 30(b)(6) deposition by stating that MET was still waiting for a response to its May 31, 2018 email and repeating that discovery from Selip was more urgent and should be completed first because MET needed that discovery before submitting its expert reports in July. *See* Ex. K, June 7, 2018 Email from R. Coe to M. Brophy.

After ignoring several more communications from MET emphasizing the importance of Selip completing its document production, Selip submitted a letter to the Court requesting that it address Selip's request for a Rule 30(b)(6) deposition. *See* Ex. L, June 20, 2018 Letter from M. Brophy to Judge Schwab. In lieu of filing a motion to compel and a motion for sanctions and in accordance with the Court's procedures, MET responded on June 21, 2018, detailing Selip's repeated failure to meet its discovery

The Honorable Susan E. Schwab
September 13, 2018
Page 5

obligations, MET's numerous attempts to obtain discovery, and requesting that the Court award MET costs and fees associated with the two letters MET sent to the court in an attempt to force Selip to comply with its discovery obligations. *See* Ex. M, June 21, 2018 Letter from R. Coe to Judge Schwab.

On July 11, 2018, Judge Schwab entered a Fourth Amended Scheduling Order and a separate Order requiring Selip to produce "any additional documents that were requested by [MET] and that were identified during Selip's CEO Carlo Romani's deposition."

On August 8, 2018, Selip made a supplemental document production. Notably, this production did not contain any internal Selip communications regarding the FRP piping failure or the report from Selip's internal investigation. The production did, however, contain several documents that should have been produced nearly three years ago. The bulk of Selip's production were Selip manufacturing procedures, such as a procedure for painting FRP products and a procedure for manufacturing FRP products. These procedures are responsive to MET's Second Request for Production, requesting "All documents relating to Selip's manufacturing policies, processes, and procedures for FRP piping from 2005 to present, including, but not limited to, documents relating to Selip's quality control policies, processes, and procedures."

In addition, Mr. Romani claimed during his deposition that, even if Selip's piping was not manufactured in accordance with the drawings it supplied, the piping would not have failed based on calculations supposedly performed by Selip's engineers. Mr. Romani acknowledged that he had seen these calculations prior to his deposition but that he did not provide those calculations to his attorney for production. Ex. I, Romani Dep. at 114:20-115:14. In the August 8, 2018 production, Mr. Brophy purported to produce these calculations. However, the document containing the calculations is dated July 11, 2018, a month after Mr. Romani's deposition. During an August 23, 2018 conversation between Mr. Coe and Mr. Brophy, Mr. Brophy stated that these documents may have been "recreated" and that he would check with his client. The following day, Mr. Coe sent an email to Mr. Brophy asking him to explain when the two documents were created. Ex. N, Aug. 24, 2018 Email from R. Coe to M. Brophy. Mr. Brophy has not responded to this request.

### **MET's Grounds to File a Motion for Sanctions**

District courts have broad discretion in determining whether sanctions are appropriate for violation of the discovery rules or the Court's discovery orders. *See, e.g., Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). Fed. R. Civ. P. 37(b)(2)(A) provides that, if a party fails to obey a discovery order, a district court may impose the following non-exhaustive list of sanctions: (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the

The Honorable Susan E. Schwab
September 13, 2018
Page 6

action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.  Fed. R. Civ. P. 37(a)(5)(A) mandates that the Court order the payment of reasonable expenses after a motion to compel is granted or the requested discovery is produced after the motion is filed unless other circumstances make an award of expenses unjust.

### Costs and Attorneys' Fees

MET is entitled to recover its costs and attorneys' fees associated with compelling discovery.  Pursuant to Fed. R. Civ. P. 37(a)(5)(A), if a motion to compel is made and the nonmoving party provides the requested discovery after the motion is made, the court "*must*, after giving an opportunity to be heard, require the party or dependent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorneys' fees." *Id.* (emphasis added); *see also Stufft v. Kennametal, Inc.*, No. CIV.A. 3:13-120, 2014 WL 1803348, at *1 (W.D. Pa. May 6, 2014); *Pugliese v. Cty. of Lancaster*, No. 12-CV-07073, 2014 WL 5470469, at *3 (E.D. Pa. Oct. 29, 2014));*Winner v. Etkin & Co.*, No. 2:07-CV-903, 2008 WL 5429623, at *4 (W.D. Pa. Dec. 31, 2008).

As part of MET's First Set of Requests for Production of Documents, it requested "[a]ll documents relating to Selip's manufacturing policies, processes, and procedures for FRP piping from 2005 to present, including, but not limited to, documents relating to Selip's quality control policies, processes, and procedures." *See* Ex. A, RFP No. 2, MET First Set of Requests for Production.  Despite multiple correspondences with opposing counsel regarding this specific issue, including a deficiency email and deficiency letter, Selip refused to produce the requested documents until MET sought assistance from the Court in compelling the necessary discovery.  In fact, it was not until August 8, 2018— after MET was forced to send two letters to the Court and the Court entered two orders requiring Selip to comply its discovery obligations— that Selip provided MET with six documents related to Selip's procedures for the manufacture of FRP piping that were not previously produced.[1]

Because these documents are responsive to Request for Production No. 2 and were not produced until MET after sought intervention from this Court multiple times,

---

[1] Alternatively, MET should be awarded its costs and fees associated with drafting its two discovery letters to the Court because the Court entered an Order compelling Selip to produce additional discovery in response to each letter, effectively granting MET's motions to compel.

MET is entitled to recover the costs, including attorneys' fees, that it incurred in compelling Selip to produce these documents.

    Default Judgment

    Fed. R. Civ. P. 37(b)(2)(A)(vi) authorizes district courts to render a default judgment against a party that disobeys a discovery order from the court. *ASD Specialty Healthcare, Inc. v. New Life Home Care, Inc.*, No. CIV.A. 3:11-0068, 2013 WL 1482777, at *8 (M.D. Pa. Apr. 10, 2013); *Curtis T. Bedwell & Sons, Inc. v. Int'l Fid. Ins. Co.*, 843 F.2d 683, 696–97 (3d Cir. 1988).

    Here, a default judgment should be entered against Selip because it repeatedly failed to produce internal communications related to the catastrophic failure of the FRP piping. Selip's representation that it has no internal communications regarding the failure of the FRP piping is implausible and contradicted by Mr. Romani's deposition testimony. In his deposition, Mr. Romani testified that, at the very least, Selip created an internal report documenting the results of Selip's investigation of the FRP piping failure. Ex. I, Romani Dep. at 79:21-81:16. He further testified that Selip internally "debated a lot what happened," *id*. at 96:21-97:8, which makes sense because Mr. Romani testified that no customer had ever made such a claim against Selip in its roughly sixty year history. *Id*. at 114:2-10. Mr. Romani further described meeting with a number of employees to evaluate what caused the piping failure. *Id.* at 96:21-97:8. It makes no sense that Selip would have sent zero emails or other internal communications about an event that it admits was so monumental. Indeed, Mr. Romani essentially admitted that Selip intentionally withheld these internal communications because it is his belief that these internal communications do not need to be shared with customers. That may be the rule in Italy, but is certainly not the rule under the Federal Rules of Civil Procedure.

    When determining whether to enter a default judgment for non-compliance with a discovery order, courts will look to the six factors set forth in *Poulis v. State Farm Fire & Casualty Co.*, 747 F.2d 863, 868 (3d Cir.1994): (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense. No single factor is dispositive, every factor need not be present, and "there is no 'magic formula'" for balancing these six factors. *United States v. Zimmerman*, No. 09-5158, 2011 U.S. Dist. LEXIS 42121, at *13 (E.D. Pa. Apr. 19, 2011).

    It is clear that all of the *Poulis* factors weigh in favor of granting default judgment in favor of MET. First, Selip, not its attorney, is the primary cause of its failure to

The Honorable Susan E. Schwab
September 13, 2018
Page 8

produce relevant documents.  MET has no reason to believe that Mr. Brophy has not inquired about the relevant documents and appropriately informed Selip of its discovery obligations.  However, based on the deposition of Mr. Romani and Selip's deficient document productions, Selip nevertheless is withholding critical documents of its own accord.

Second, Selip's failure to comply with the Court's discovery orders has resulted in substantial prejudice to MET.  The documents Selip refuses to produce, such as its internal analysis of the FRP piping failure and internal communications related to that failure, are critical to MET's claims.  The cause of the FRP piping failure is the crux of MET's claim that Selip breached its contract with MET by failing to provide FRP piping manufactured in accordance with the parties' contract.  MET has attempted to obtain these communications for nearly three years without success.  Another Court Order requiring Selip to produce these documents in unlikely to be successful – Selip has already ignored two such orders.  Even if it did result in the production of additional internal communications, the damage has already been done because MET has been unable fully to prepare its case without these documents.  More importantly, MET has been prejudiced by Selip's delay tactics, which have significantly increased MET's fees, and would be further prejudiced if the discovery deadline is further extended.

Third, Selip has a history of dilatoriness.  It has been almost three years since MET first served discovery requests.  Since then, this Court has intervened twice and ordered Selip produce document on two separate occasions.  Selip continues to ignore the Court's orders.

Fourth, Selip acted willfully and in bad faith.  There is no reason to believe that Selip's counsel has not advised Selip of its obligation to comply with the discovery rules, and the repercussions for not doing so.  Selip's failure to produce internal communications is an intentional attempt to prolong this litigation and needlessly increase MET's costs and fees.

Fifth, sanctions other than a default judgment are not likely to be effective because this Court has ordered that Selip produce the responsive documents twice and Selip has ignored both of those Orders.

Sixth, MET's claims are meritorious.  To establish that a claim is meritorious for the purpose of default judgment pursuant to Fed. R. Civ. P. 37, the moving party does not need to meet a summary judgment standard.  *Drozd v. Padron*, No. 3:13-CV-2523, 2015 WL 507167, at *10 (M.D. Pa. Feb. 6, 2015).  At a minimum, MET's claims are meritorious because they have survived Selip's motion to dismiss.  *See id.*

Based on the above, MET has grounds to move for a default judgment pursuant to Fed. R. Civ. P. 37(b)(2)(A)(vi) and should be permitted to do so.

The Honorable Susan E. Schwab
September 13, 2018
Page 9

Preclusion of Evidence

In the alternative, the Court should preclude evidence related to Selip's defense that the FRP piping would have failed even if it had been manufactured in accordance with MET's specifications and Selip's design.

Fed. R. Civ. P. 37(b)(2)(A)(i) and (ii) permit the Court to enter a sanctions order that establishes "designated facts be taken as established for purposes of the action" and/or "prohibit[s] the disobedient party from supporting designated claims or defenses, or from introducing designated matters in evidence."

By way of background, as part of MET's investigation of the catastrophic failure of the FRP piping, it hired Fiberglass Structural Engineering ("FSE") (a fiberglass specialty engineering and inspection firm) to determine whether Selip constructed the piping in accordance with the drawings and specifications provided by Selip. On August 15, 2014, FSE issued a report, stating that its "evaluation of flange samples indicate[d] a generally poor construction method which use[d] low strength reinforcement and non-structural components in the flange area, factors that reduce the load-bearing capability of the flanges." *Id.* at 25. For example, a key finding in the report was that Selip failed to include the sixteen (16) layers of woven roving called for by its drawings in the flange area of the FRP piping. *Id*. at 10 (Selip drawing), 21, 24. FSE found that all but one of the samples it studied contained *zero* of the sixteen required layers of woven roving and the remaining sample only had one of the required sixteen layers. *Id*. at 24-25. FSE described this defect as "very significant since the woven roving is considered the strength layer in hand lay-up laminates." *Id.* at 24. FSE concluded that "[t]he strength in the hub will be much less for a laminate consisting only of mat vs. the required laminate that contains multiple layers of woven roving." *Id.*

During the deposition of Mr. Romani, Selip claimed for the first time that the FRP piping would have failed even if it had been manufactured in accordance with MET's specifications and Selip's design because the pressures in the Selip piping exceeded the design parameters at the time of the failure. This speculative and unsupported testimony was based on the hypothesis that MET's customer, ZAP, might have conducted an air test resulting in high pressures. *Id.* at 95:7-97:8. Mr. Romani had no basis for the hypothesis other than pictures showing that the ZAP plant was clean several days after the accident and a supposed calculation that a Selip engineer performed showing that the pipe would have failed at these hypothetical pressures even if it had all of its woven roving lawyers. *Id.* at 95:7-97:8; 114:20-115:10.

This testimony relates to Selip's failure to produce responsive documents because Mr. Romani explicitly testified that he saw calculations. *Id.* at 114:20-115:14. If such a document existed, it should have been produced years before Mr. Romani's May 2018

The Honorable Susan E. Schwab
September 13, 2018
Page 10

deposition, but was not.  In addition to the calculations, there are likely several internal communications relating to Mr. Romani's request that the calculation be performed, the parameters for the calculations, and the results of those and possibly other calculations.

Based on Mr. Romani's testimony, MET filed its second discovery letter with the Court requesting that the Court compel Selip to produce this document, among other things.  Following an Order by the Court that Selip produce documents identified during Mr. Romani's deposition, Selip produced a single responsive document that appears to have been created after Mr. Romani's deposition.  It is dated July 11, 2018.  This document was marked confidential. It is available and can be submitted to the Court under seal if the Court wishes to review it.

On August 24, 2018, MET requested that Selip's counsel confirm whether this document was created before or after July 11, 2018, but Selip did not respond to that request.  Ex. N, Aug. 24, 2018 Email from R. Coe to M. Brophy.  Either these calculations did not exist at the time of Mr. Romani's deposition, and Mr. Romani's testimony was false, or the original calculations were destroyed and Selip spoliated evidence.

Regardless of the origins of this document, this conduct is just the latest example of Selip's sanctionable discovery conduct.  Even if the document was created before Romani's deposition, MET was prejudiced by its late production and Selip's failure to produce any internal communications related to the calculation (or any other internal communications).

MET has no information about who performed the calculation, how the calculation was performed, when the calculation was performed, or what instructions were given to the person performing the calculation.  Without this information, MET could not properly prepare for Mr. Romani's deposition and has had no opportunity to obtain evidence from ZAP related to the hypothetical "air test."  Also, Selip's blatant disregard of the discovery rules have deprived MET of the opportunity to test this hypothesis with its own expert.  Requiring MET to develop this evidence at this late date after document discovery has closed and the case has been pending for three years would place a tremendous burden on MET and result in significant prejudice to MET.  As a result, Selip should be prohibited from entering evidence that the FRP piping would have failed even if had been manufactured in accordance with MET's specifications and Selip's design.

Based on the above, MET respectfully requests that the Court grant it permission to file a motion for sanctions against Selip, which will explain MET's arguments and the law in more detail.

The Honorable Susan E. Schwab
September 13, 2018
Page 11

      Thank you for your attention to this matter.  Please let me know if you have any questions.

                Very Respectfully,

                /s/ Richard E. Coe
                Richard E. Coe

REC/cep

cc:    Michael D. Brophy, Esq.