## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

MARSULEX ENVIRONMENTAL  :     **CIVIL NO.: 1:15-CV-00269**
TECHNOLOGIES,  :
                          :
        Plaintiff,  :
                          :     (Chief Magistrate Judge Schwab)
     v.  :
                          :
SELIP S.P.A.,  :
                          :
        Defendant.  :

## MEMORANDUM
May 21, 2019

### I. Introduction.

This case arises from a catastrophic incident at a fertilizer manufacturing plant in Poland owned by Zaklady Azotowe Pulawy S.A. ("ZAP"), a Polish chemical company. The plaintiff, Marsulex Environmental Technologies ("Marsulex"), is a Delaware corporation with a principal place of business in Pennsylvania that oversaw the design and purchasing of parts for the construction of a Flue Gas Desulfurization unit ("FGD unit" or "the unit") within ZAP's plant. The defendant, Selip S.P.A. ("Selip"), is an Italian corporation that manufactures external fiberglass reinforced plastic piping ("FRP piping" or "the piping").

In 2010, Marsulex and Selip entered into a contract that required Selip to design, manufacture, and supply FRP piping for use in the construction of the FGD unit in ZAP's plant. After the unit was constructed and put into use in the plant, ZAP allegedly discovered that the piping Selip had supplied was defective. The FGD unit subsequently failed, causing ZAP to shut down its plant. Marsulex covered the costs of the unit's failure and then sought reimbursement for those costs from Selip. After Selip refused to reimburse Marsulex, Marsulex initiated this litigation.

The case is presently before us on a motion for sanctions filed by Marsulex. Marsulex argues that Selip failed to properly preserve evidence, which resulted in the loss or destruction of evidence that was relevant to Marsulex's claims. As a sanction for Selip's alleged failure to preserve evidence, Marsulex argues that it should be awarded default judgment, or, alternatively, that Selip should be precluded from presenting certain defenses at trial. Marsulex argues if we find the evidence insufficient to impose those sanctions, we should order a forensic examination of Selip's computers to determine whether evidence was lost or destroyed. Finally, Marsulex argues that it should be awarded the costs and attorneys' fees that it incurred in filing its motion and in drafting its prior letters to the court regarding Selip's alleged discovery abuses.

Because we find that the evidence strongly suggests but does not conclusively establish that Selip engaged in the spoliation of evidence, we will grant Marsulex's motion insofar as it seeks a forensic investigation of certain Selip computers. To the extent Marsulex's motion seeks more extreme sanctions or attorneys' fees and costs, however, we will deny the motion without prejudice to Marsulex filing a motion for more extreme sanctions at a later date.

## II. Background.[1]

Marsulex and ZAP first entered into a contract for the construction of the FGD unit on January 22, 2010. *Doc. 33 ¶¶ 9-10; doc. 127 ¶¶ 9-10.* After Marsulex determined that the unit would need to contain FRP piping, it entered into a contract with Selip for the provision of the piping. *Doc. 33 ¶¶ 12-14; doc. 127 ¶¶ 12-14.*

Selip delivered the piping to ZAP's plant on February 3, 2011. *Doc. 33 ¶ 18; doc. 127 ¶ 18.* ZAP began using the FGD unit containing the piping in October 2012. *Doc. 33 ¶ 19; doc. 127 ¶ 19.* In January 2013, Selip was notified that there were cracks in the piping. *Doc. 33 ¶ 20; doc. 127 ¶ 20.* Selip classified the cracks as superficial and filled them with resin. *Id.* In September 2013, Selip was

---

[1] Because this memorandum focuses only on Marsulex's motion for sanctions, we summarize only the procedural history that pertains to that motion. We provide a more detailed procedural history of the rest of the litigation in our memorandum addressing Selip's motion for summary judgment.

notified of additional cracks in the piping.  *Doc. 33* ¶ 21; *doc. 127* ¶ 21.  In April 2014, Selip went to ZAP's plant to examine the piping.  *Doc. 33* ¶ 22; *doc. 127* ¶ 22.  Selip stated that it would provide support and assistance to repair the cracks but stated that either Marsulex or ZAP would have to pay for the repairs.  *Id.*

In late May of 2014, the FGD unit malfunctioned, which caused significant damage to ZAP's plant and resulted in ZAP shutting the plant down for approximately three months.  *Doc. 33* ¶¶ 24-25, 27; *doc. 127* ¶¶ 24-25, 27.  ZAP informed Marsulex of the malfunction on June 2, 2014, and Marsulex informed Selip the same day.  *Doc. 33* ¶ 23; *doc. 127* ¶ 23.

Following the malfunction of the FGD unit, Marsulex hired a third-party expert to investigate.  *Doc. 33* ¶ 30; *doc. 127* ¶ 30.  Based on the expert's conclusions, Marsulex informed Selip that the malfunction was caused by defects in the FRP piping that Selip manufactured.  *Doc. 33* ¶ 36; *doc. 127* ¶ 36.  MET requested payment from Selip for $557,873.53, which Selip refused to pay.  *Doc. 33* ¶¶ 38-39; *doc. 127* ¶¶ 38-39.

Following Selip's refusal to pay, Marsulex filed suit against Selip on September 6, 2015, raising causes of action for strict products liability, breach of contract, breach of an express warranty, breach of an implied warranty, and unjust enrichment.  *Doc. 1* at 9-13.  After we resolved two motions to dismiss filed by Selip (*see docs. 28-29*, *49-50*) and the parties concluded discovery, Marsulex filed

a motion for sanctions on January 25, 2019 and Selip filed a motion for summary judgment on January 31, 2019. *Docs. 112, 115.* We address Selip's motion for summary judgment in a separate memorandum and begin our analysis of Marsulex's motion for sanctions by detailing the history of the parties' discovery dispute.

### III. History of the Parties' Discovery Dispute.

Marsulex served its first set of interrogatories and requests for production of documents on October 14, 2015. *See doc. 85-1.* Two of Marsulex's requests for production of documents are particularly relevant to the current sanctions dispute. In request for production of documents number 1 ("request number 1"), Marsulex sought "[a]ll documents relating to the June 2010 FRP piping, including any communications with MET or ZAP regarding the June 2010 FRP piping and any documents relating to Selip's investigation of the June 2010 FRP piping failure." *Id.* at 9. In request for production of documents number 2 ("request number 2"), Marsulex sought "[a]ll documents relating to Selip's manufacturing policies, processes, and procedures for FRP piping from 2005 to present, including, but not limited to, documents relating to Selip's quality control policies, processes, and procedures." *Id.*

On December 2, 2015, we issued an order requiring the parties to "respond to any discovery that has been previously propounded" and staying all other discovery pending the resolution of Selip's first motion to dismiss, which had been filed on April 1, 2015. *Doc. 23*. Selip responded to Marsulex's first set of requests for the production of documents on December 8, 2015. *See doc. 85-2*. We then granted in part and denied in part Selip's motion to dismiss on March 18, 2016. *Doc. 28-29*. On April 12, 2016, we again ordered the parties to respond to all previously propounded discovery requests but stayed further discovery "pending the filing of Plaintiff's amended complaint, as well as any dispositive motions in response thereto." *Doc. 32*. Marsulex filed its amended complaint on April 15, 2016. *Doc. 33*.

On June 24, 2016, Marsulex's counsel Christian E. Piccolo ("Piccolo") sent an email to Selip's counsel Matthew R. Shindell ("Shindell") outlining deficiencies in Selip's production of documents. *See doc. 85-3* at 2. Among other deficiencies, Piccolo stated that Selip had only produced "a handful of electronic correspondence" in response to request number 1 and had only produced "documents relating to the policies, processes, and procedures for the defective FRP piping it supplied Marsulex." *Id.* at 3. Piccolo requested that Selip supplement its response to request number 1 "to include all electronic correspondence Selip has had regarding the June 2010 FRP piping or please state

6

that Selip has no additional electronic correspondence regarding the June 2010 FRP piping." *Id.* Piccolo also requested that Selip supplement its response to request number 2 given that the request was "much broader" than the class of documents that Selip had produced. *Id.*

On June 30, 2016, Selip filed a motion to dismiss Marsulex's amended complaint. *Doc. 42.* We addressed this motion to dismiss on March 27, 2017, granting it insofar as it sought dismissal of Marsulex's strict liability claim, but denying it in all other respects. *Docs. 49-50.* We referred the case to mediation shortly thereafter, on April 6, 2017. *Doc. 52.* Selip filed an answer to Marsulex's amended complaint on May 5, 2017. *Doc. 53.* We then stayed all deadlines in the case pending the mediation. *Doc. 54.*

On September 18, 2017, Shindell filed a motion to withdraw as counsel for Selip. *Doc. 57.* On September 29, 2017, Marsulex's counsel, Richard E. Coe ("Coe") filed a letter informing the court that mediation likely would not be productive based on representations made to his client by Selip's CEO, Carlo Romani ("Romani"). *Doc. 58.* Because of the likely failure of mediation, Marsulex requested that new case management deadlines be set. *Id.* Following a conference call with the parties, we issued an order setting new case management deadlines and granting Shindell's motion to withdraw as counsel for Selip on

October 26, 2017. *Doc. 61*. We set January 30, 2018 as the deadline for fact discovery. *Id.* at 1.

On January 8, 2018, attorney Michael David Brophy ("Brophy") filed a petition for admission *pro hac vice* to represent Selip. *Doc. 63*. Coe then wrote a letter to Brophy outlining the deficiencies in Selip's discovery responses on January 11, 2018. *See doc. 85-4*. Coe specified that the deficiencies were the same as those outlined by Piccolo in her June 24, 2016 letter to Shindell. *Id.* at 2. With regard to request number 1, Coe sought production of "all electronic correspondence Selip has had regarding the June 2010 FRP piping." *Id.* at 3. Coe also sought a supplemental response to request number 2. *Id.* Coe and Brophy then met in person on January 18, 2018, at which point Brophy represented that Selip likely possessed additional documents that were responsive to Marsulex's requests. *Doc. 85* at 2. We then granted Brophy's petition to proceed *pro hac vice* on January 22, 2018. *Doc. 65*. On January 25, 2018, we issued a second amended case management order, extending the deadline for fact discovery to April 30, 2018. *Doc. 67*.

On February 7, 2018, Lucas B. Michelen ("Michelen"), an attorney with Drinker Biddle & Reath, the firm that represents Marsulex, emailed Brophy to follow up on Coe's January 11, 2018 deficiency letter. *Doc. 85-5* at 3. Michelen stated Marsulex's understanding that Selip was going to produce additional

documents that were responsive to its requests. *Id.* Brophy responded the next day, stating that he would follow up with Selip about the additional documents and that he would provide a more complete discovery response by February 16, 2018. *Id.* at 2. Michelen replied that his firm agreed to that date. *Id.*

Michelen sent Brophy another follow-up email on February 20, 2018. *Doc. 85-6* at 2-3. Michelen asked if Brophy had spoken with Selip about the additional documents. *Id.* Brophy responded that both he and Selip had been working diligently on discovery but that they had lost time because he had been ill. *Id.* at 2. Brophy then requested until the end of the next week to provide a more detailed response, which Michelen accepted. *Id.*

Michelen sent Brophy a third follow-up email on March 12, 2018, asking for "any updates" as to when Brophy would be producing the additional documents. *Doc. 85-7* at 2. Michelen also stated that if Marsulex did not receive the additional documents by the end of the week, it would have to file a motion to compel discovery. *Id.* Brophy responded on March 13, 2018, stating that he did not have any updates and that he would notify Michelen's firm when he received more information. *Id.* Brophy also stated that he understood that Marsulex would need to consider filing a motion with the court. *Id.* The parties then had a conference call on the same day to discuss Marsulex's intention to file a motion to compel discovery. *See doc. 68* at 3.

On March 23, 2018, Coe filed a letter informing the court of Selip's deficient discovery responses. *Doc. 68.* Coe stated that Marsulex would need to file a motion to compel discovery if Selip did not correct those deficiencies quickly. *Id.* at 3. Brophy responded to Coe's letter on April 3, 2018. *Doc. 71.* Brophy stated that he had spoken with a representative from Selip the previous week, who represented that (1) the company would search for additional documents responsive to request number 1 and produce them to Brophy by April 6, 2018; (2) documents responsive to request number 2 were "readily available" and would be produced promptly; and (3) the company would search for additional documents relevant to complaints the company had received regarding FRP piping. *Id.* at 1.

We had a conference call with the parties to discuss the discovery process on April 12, 2018, after which we issued a third amended case management order. *Doc. 73.* In that order, we required Selip to "produce the documents that have been requested" by Marsulex. *Id.* at 1. We also postponed the deadline for fact discovery to May 31, 2018. *Id.*

On April 25, 2018, Selip supplemented its discovery response with a new production of documents. *Doc. 81* at 2. That production, however, only contained four documents that Selip had not already produced—three emails that had been exchanged between Selip and Marsulex and a report written by ZAP that had

previously been distributed to both Selip and Marsulex. *Id.* Marsulex already possessed all four documents prior to Selip's new production. *Id.*

On April 30, 2018, the parties filed a status report informing the court of their belief that a settlement conference would be beneficial. *Doc. 75.* We accordingly referred the case to Magistrate Judge Carlson, who scheduled a settlement conference with the parties on May 23, 2018. *Docs. 76-77.* Judge Carlson conducted the settlement conference, but the parties failed to settle the case. *Doc. 78.*

On May 24, 2018, Marsulex deposed Romani. *See doc. 114-1.* Following that deposition, the parties met and conferred about the discovery process on May 31, 2018. *Doc. 81* at 2. Coe sent a follow-up email to Brophy after the meeting. *See doc. 81-2.* In his email, Coe stated that Selip's April 25, 2018 production of documents "did not come close" to complying with our April 13, 2018 order for Selip to produce all documents that Marsulex had requested. *Id.* Coe further stated that Romani's deposition revealed that there were certain documents that Selip had not produced. *Id.* Coe therefore sought immediate production of six categories of documents:

> 1. All internal communications related to the FRP Piping manufactured for ZAP, including but not limited to, internal communications relating to the failure of the FRP piping;

2. All documents related to any investigations conducted by Selip of the FRP piping in the ZAP Plant, including any reports related to the cracks in the piping or the piping's failure;

3. All documents related to any calculations Selip performed after the failure of the FRP Piping, including but not limited to calculations related to the replacement of woven roving layers with mat layers;

4. All quality assurance records related to FRP piping manufactured for ZAP, including but not limited to any documents relating to the design, manufacture, operation or failure of the piping;

5. Any documents related to issues raised by customers or customer complaints related to FRP Piping, including but not limited to, the records of these communications maintained by Selip's quality management or assurance personnel; and

6. All communications with Selip's insurer, including but not limited to, the claim Selip made and all emails Selip received from its insurer in response.

*Id.* at 2.  Coe also requested the availability of Giuseppe Alfieri ("Alfieri"), Selip's Service Manager, and Massimo Ferrari ("Ferrari"), Selip's Engineering Director, both of whom Marsulex planned to depose.  *Id.* at 3.

On June 7, 2018, Brophy sent a letter to Coe requesting that the parties set dates for Selip to depose Marsulex's Rule 30(b)(6) corporate designee.  *Doc. 85-11* at 2.  Coe responded that he had not received a response from Brophy regarding either Selip's production of additional documents or the scheduling of the Alfieri and Ferrari depositions.  *Id.*  Coe stated that the Alfieri and Ferrari depositions should occur before the 30(b)(6) deposition given that Marsulex's expert report was due in July 2018.  *Id.*  Brophy emailed again on June 8, 2018 and stated that

Marsulex was seeking to unilaterally "control the course of discovery in this matter." *Doc. 81-4* at 2. Brophy stated that he expected Marsulex to cooperate in scheduling the 30(b)(6) deposition. *Id.* at 2-3. Coe responded the same day, stating, "[w]e are not taking the position that we are entitled to control the course of discovery. We are taking the position that the discovery from your client is more urgent and, given your client's repeated failures to comply with its discovery obligations, should come first." *Id.* at 2. Brophy responded to this email on June 12, 2018 and stated that he had not received the May 31, 2018 email to which Coe had repeatedly referred in his prior email. *Doc. 81-5* at 2. Coe responded later that day. *Doc. 81-6* at 2. He apologized for inadvertently sending the May 31, 2018 email to an older email address for Brophy and forwarded the May 31, 2018 email to Brophy. *Id.*

On June 20, 2018, Brophy filed a letter informing the court that Marsulex was refusing to produce a witness for its Rule 30(b)(6) deposition. *Doc. 79*. Coe responded to this letter on June 21, 2018. *Doc. 81*. Coe stated that Marsulex insisted on receiving further discovery before scheduling the Rule 30(b)(6) deposition because it needed the additional discovery to determine whether it should hire an additional expert before the Rule 30(b)(6) deposition. *Id.* at 1. Coe requested that the court (1) order Selip to comply with its discovery obligations, (2) extend the deadline for Marsulex's expert report, and (3) award Marsulex its

fees and costs arising from its efforts to get Selip to comply with its discovery obligations. *Id.*

Following a status conference with the parties, we issued a fourth amended case management order on July 11, 2018. *Doc. 83.* We extended the deadline for the filing of Marsulex's expert report to September 11, 2018 and extended other deadlines in the case accordingly. *Id.* at 1. We also issued another order in which we required Selip to produce any additional documents that were requested by Marsulex and identified during Romani's deposition. *Doc. 84* at 1. We also ordered that the deposition of Marsulex's Rule 30(b)(6) designee was to occur on or before August 24, 2018, and that Marsulex was to depose Alfieri and Ferrari on or before October 8, 2018. *See id.*

On August 8, 2018, Selip made a supplemental production of documents. *Doc. 85* at 5. The production contained documents that were responsive to request number 2 but did not contain any internal communications about the FRP piping or any internal reports from Selip regarding the incident at ZAP's plant. *Id.* The production also included a calculation that Romani had purportedly referenced during his deposition, but the date on the calculation was July 11, 2018, over a month after Romani's deposition. *Id.* Coe and Brophy spoke about discovery on August 23, 2018, and Brophy stated the calculation may have been re-created and that he would follow up with Selip on that issue. *Id.* Coe sent an email the next

day and asked Brophy to confirm the dates on which the calculations were created. *Doc. 85-14* at 2.

On September 13, 2018, Coe filed a letter requesting our permission to file a formal motion for sanctions "due to Selip's unabashed discovery abuses and repeated failures to comply with this Court's discovery Orders." *Doc. 85* at 1. On September 27, 2018, we granted Marsulex's motion for extension of time and allowed the Alfieri and Ferrari depositions to occur on or before December 7, 2018. *Doc. 88.* Brophy then responded to Coe's request for permission to file a formal motion for sanctions on October 3, 2018. *Doc. 92.* Brophy argued that such a motion would be "premature" and "based upon an inaccurate recital of the factual record." *Id.* at 1. Brophy further argued that he had "neither direct knowledge *nor any reason to believe* that Selip [had] failed to undertake all necessary measures to comply with its discovery obligations and the Court's orders in this matter." *Id.* at 2.

On October 5, 2018, we denied Marsulex's request for permission to file a formal motion for sanctions without prejudice. *Doc. 93* at 1. Coe filed a letter requesting reconsideration of this order on October 19, 2018. *Doc. 94.* Coe noted that Selip offered no substantive evidence to refute Marsulex's arguments for sanctions and instead "offered only the vague, conclusory statement by its counsel that it has 'searched its records.'" *Id.* at 1. Coe continued: "Selip offers no

evidence that it complied with its discovery obligations, and [Marsulex] should be permitted to file a motion for sanctions so the Court can assess evidence, not the unsubstantiated allegations of Selip's counsel." *Id.* We responded to this motion for reconsideration by scheduling a motion hearing on November 15, 2018. *Doc. 95.*

Following that hearing, we issued an order on November 16, 2018 requiring Selip to file at least one affidavit detailing the efforts that it took to institute a litigation hold. *Doc. 97* at 1. We also required Selip to provide signed affidavits detailing the knowledge that Alfieri and Ferrari had regarding internal communications about this case and specified that such affidavits needed to be produced before Alfieri and Ferrari were deposed. *Id.* at 1-2.

On November 28, 2018, Romani signed a declaration to address Selip's implementation of a legal hold. *See doc. 114-2.* Romani stated that Selip had not implemented a formal litigation hold. *See id.* ¶ 4. Romani stated that despite the lack of a formal litigation hold, his communication with Brophy had "at all times proceeded with the understanding that Selip has maintained its records as required in a 'litigation hold' context." *Id.* ¶ 6. Romani stated that "Selip's records have been maintained and stored in a password protected, electronic format" and that to the best of his knowledge "there have been no deletions, modifications or revisions of these records at any time and they will remain in this condition until the

litigation is closed." *Id.* ¶ 7. Romani also stated that he had communicated information about the requirement of preserving documents to Alfieri, Ferrari, and Marco Pedrazzi ("Pedrazzi"), Selip's Sales Director. *Id.* ¶ 8.

On December 4, 2018, Selip filed a motion for a protective order seeking to have the Alfieri and Ferrari depositions in Italy rather than the United States. *Doc. 98.* On December 11, 2018, we issued an order that granted Selip's motion and specified that the depositions would occur via video conference. *Doc. 104* at 1. We also allowed Marsulex to file a formal motion for sanctions on or before January 11, 2019. *Id.* Finally, we extended the deadline for the filing of dispositive motions to January 31, 2019. *Id.*

On January 4, 2019, Marsulex requested an extension of time in which to file its motion for sanctions (*doc. 110*), which we granted on January 7, 2019, allowing Marsulex to file its motion for sanctions on or before January 25, 2019. *Doc. 111.* Marsulex then filed its motion for sanctions on January 25, 2019 along with a supporting brief, a declaration from Coe, and numerous exhibits. *See docs. 112-14.* Selip filed a brief in opposition to the motion for sanctions on February 25, 2019 (*doc. 122-2*), and Marsulex filed a reply brief on March 11, 2019. *Doc. 125.*

Marsulex argues that sanctions are justified because Selip did not implement a formal litigation hold and failed to otherwise preserve evidence relevant to this

case.  *Doc. 113* at 5-6.  Marsulex argues that this failure to preserve evidence led to evidence being lost or destroyed.  *Id.* at 7.  By way of example, Marsulex points to Selip not producing a single internal communication regarding the case.  *Id.* Marsulex also notes that Selip has not produced any documents related to a visit Alfieri made to the ZAP plant after the incident, other than the final version of the report that Alfieri drafted and the email forwarding the report to Marsulex.  *Id.* Selip argues that the imposition of sanctions is not justified because there is insufficient evidence to conclude that Selip engaged in the spoliation of evidence. *See doc. 122-2* at 18.  Selip also argues that it took sufficient action to preserve relevant evidence through the use of a central server where its employees archived files related to Marsulex and ZAP.  *See id.* at 4-5.  Marsulex responds that Selip's argument amounts to an attempted misdirection and that such a misdirection "cannot alter the undisputed fact that [Selip] failed to implement a litigation hold or otherwise inform its employees of their duty to preserve documents."  *Doc. 125* at 2.  Marsulex reiterates that Selip did not implement a formal litigation hold and did not take steps to otherwise preserve relevant documents.  *Id.*  Marsulex argues that Selip's use of a server was not sufficient to satisfy its duty to preserve evidence because "[h]aphazardly saving documents to a company server is not the same as implementing a legal hold and conducting a systematic search for relevant documents."  *Id.*

## IV. Discussion.

### A. Legal Standards Governing the Imposition of Sanctions.

This court has the power to impose sanctions both under Rule 37 of the Federal Rules of Civil Procedure and through the court's inherent powers. Rule 37 specifies that a court may sanction a party for failure to "obey an order to provide or permit discovery." Fed. R. Civ. P. 37(2)(A). Through its sanctioning power under Rule 37, a court may direct that certain facts be taken as established, prohibit the sanctioned party from supporting or opposing certain claims or defenses, strike pleadings in whole or in part, stay proceedings, dismiss the action, render a default judgment, or treat the failure to obey court orders as contempt of court. *Id.* In addition to Rule 37, federal courts also have "inherent discretionary power 'to fashion an appropriate sanction' for conduct like spoliation that 'abuses the judicial process.'" *Gentex Corp. v. Sutter*, 827 F. Supp. 2d 384, 390 (M.D. Pa. 2011) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

In this case, Marsulex argues that sanctions should be imposed because Selip engaged in the spoliation of evidence. *Doc. 113* at 4-12. Generally, a finding of spoliation is proper "when evidence is destroyed or altered, or when a party fails to preserve evidence in instances where litigation is pending or reasonably foreseeable." *Bull v. United Parcel Serv., Inc.*, 665 F.3d 68, 73 (3d Cir. 2012) (citing *Micron Tech., Inc. v. Rambus Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011)).

19

Under certain circumstances, the nonproduction of evidence is also "rightfully characterized as spoliation" because "a party's failure to produce a document can have the same practical effect as destroying it." *Id.* "Spoliation occurs where: the evidence was in the party's control; the evidence is relevant to the claims or defenses in the case; there has been actual suppression or withholding of evidence; and, the duty to preserve the evidence was reasonably foreseeable to the party." *Id.* (citing *Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 334 (3d Cir. 1995)).

In determining whether sanctions are appropriate to remedy spoliation, a court must consider "(1) the degree of fault of the party who altered or destroyed the evidence; (2) the degree of prejudice suffered by the opposing party; and (3) whether there is a lesser sanction that will avoid substantial unfairness to the opposing party and, where the offending party is seriously at fault, will serve to deter such conduct by others in the future." *Schmid v. Milwaukee Elec. Tool Corp.*, 13 F.3d 76, 79 (3d Cir. 1994). A court imposing a sanction should "select the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Id.* at 79.

"Potential sanctions for spoliation include: dismissal of a claim or granting judgment in favor of a prejudiced party; suppression of evidence; an adverse inference, referred to as the spoliation inference; fines; and attorneys' fees and

costs." *Gentex Corp.*, 827 F. Supp. 2d at 391 (quoting *Mosaid Techs. Inc. v. Samsung Elecs. Co., Ltd.*, 348 F. Supp. 2d 332, 335 (D.N.J. 2004)). In considering whether to issue a dispositive sanction, a district court should balance the following factors: "(1) the extent of the *party* 's personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense." *Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphases in original).

### B. Selip Did Not Properly Preserve Evidence.

"As a threshold matter, a party can only be sanctioned for spoliation of evidence if it had a duty to preserve it." *Culler v. Shinseki*, No. 3:09-CV-00305, 2011 WL 3795009, at *3 (M.D. Pa. Aug. 26, 2011) (citing *Micron*, 645 F.3d at 1320). A party that reasonably anticipates litigation has an affirmative duty to preserve relevant evidence. *Baliotis v. McNeil*, 870 F. Supp. 1285, 1290 (M.D. Pa. 1994)). "The duty arises whenever 'the party in possession of the evidence knows that litigation by the party seeking the evidence is pending or probable and the party in possession of the evidence can foresee the harm or prejudice that would be

caused to the party seeking the evidence if the evidence were to be discarded.'" *Botey v. Green*, No. 3:12-CV-01520, 2016 WL 1337665, at *4 (M.D. Pa. Apr. 4, 2016) (citing *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)). "While a litigant is under no duty to keep or retain every document in its possession, even in advance of litigation, it is under a duty to preserve what it knows, or reasonably should know, will likely be requested in reasonably foreseeable litigation." *Northwest Sav. Bank & Fin. Servs. V. NS First St. LLC*, No. 4:09-CV-01416, 2011 WL 6180874, at *4 (M.D. Pa. Dec. 13, 2011) (quoting *Mosaid Techs.*, 348 F. Supp. at 335).

"Once the duty to preserve arises, a litigant is expected, at the least, to 'suspend its routine document and retention/destruction policy and to put in place a litigation hold' to preserve relevant ESI or other information pertaining to the litigation." *Culler*, 2011 WL 3795009, at *3 (citing *ACORN v. Cty. of Nassau*, No. 05-CV-2301, 2009 WL 605859, at *2 (E.D.N.Y. Mar. 9, 2009)). "Subsequent to the implementation of a litigation hold, counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce relevant documents." *Id.* (citing *Zubulake v. UBS Warburg LLC*, 229 F.R.D. 422, 433 (S.D.N.Y. 2004)).

Here, Romani acknowledged in his November 28, 2018 declaration that Selip did not implement a formal litigation hold. *Doc. 114-2* ¶ 4 ("At no time after

Selip received the Complaint filed by Marsulex did our insurer or their designated attorneys, Goldberg Segalla, provide Selip with a formal 'litigation hold' notice, or similar instructions to institute such a course of action."). Rather, Romani stated that his communications with Brophy "proceeded with the understanding that Selip has maintained its records as required in a 'litigation hold' context." *Id.* ¶ 7. Romani also stated that he had communicated Selip's obligation to preserve documents to Alfieri, Ferrari, and Pedrazzi. *Id.* ¶ 8.

While Romani represents that Selip understood its obligation to preserve documents and that he told Alfieri, Ferrari, and Pedrazzi about that obligation, his representations are contradicted by the deposition testimony of Ferrari and Alfieri. In contrast to Romani's representations, the testimony of both Ferrari and Alfieri suggest that the two individuals took very little action to find or preserve documents relevant to this litigation. Specifically, Ferrari testified that he had not looked at the Marsulex file on Selip's electronic server after the lawsuit was filed because "there was no need to." *Doc. 114-5* at 55:3-5. Ferrari testified that nobody in the company had ever asked him to search his files or emails for any documents related to this case. *Id.* at 124:7-14. Ferrari also testified that he had not independently searched his emails or files for relevant documents because he allegedly knew that he did not have any relevant documents. *Id.* at 125:21-126:1. Ferrari testified that nobody at Selip had every told him to save or not destroy

documents related this lawsuit.  *Id.* at 126:18-21.  Finally, Ferrari testified that the only conversation he remembered having with Romani regarding the preservation of documents occurred "[m]aybe a month, [or a] month and a half" before Ferrari's deposition, when Romani had asked him to "give all documents, all certificates regarding the Marsulex case."  *Id.* at 127:15-128:8.

Alfieri's testimony similarly contradicts the representations made in Romani's declaration.  Alfieri testified that neither Romani nor anyone else within Selip had ever asked him whether he had any documents relevant to this case. *Doc. 114-6* at 90:2-12.  Alfieri testified that he had not independently searched his email account for any relevant documents because from his perspective "everything was all clear."  *Id.* at 90:21-91:2.  Alfieri testified that nobody had ever told him not to destroy or delete documents and that he had not had any conversations with Romani about documents after the lawsuit was filed.  *Id.* at 91:7-10; 93:6-16.  Finally, Alfieri testified that after he had finished preparing his report, he had "archived" the case, meaning he did not "follow it anymore."  *Id.* at 94:19-95:1.

Based on Romani's declaration and the testimony of Ferrari and Alfieri, we conclude that Selip did not take sufficient steps to preserve evidence in this case. As Romani acknowledged, Selip never implemented a formal litigation hold.  The testimony of Ferrari and Alfieri also demonstrates that the company failed to take

sufficient informal steps to preserve evidence in the absence of a formal litigation hold. Moreover, even if Selip's employees did save documents to the Marsulex file on its central server as Selip represents (*see doc. 122-2* at 4-5), such an action is not an adequate substitute for a formal litigation hold. *See, e.g.*, *Blumenthal Distrib., Inc. v. Herman Miller, Inc.*, No. 14-1926, 2016 WL 6609208, at *11 (C.D. Cal. July 12, 2016) (finding that company's purported "unwritten policy to indefinitely retain all information" was insufficient to satisfy duty to preserve evidence because there was no evidence either that the policy existed or that employees followed it). There is no evidence that Selip had any policy requiring its employees to save documents to the server or to save any internal communications. Even if such a policy did exist, there is no evidence that Selip's employees conducted any sort of document review to ensure that the server contained all documents relevant to the case. As Marsulex argues, "[h]aphazardly saving documents to a company server is not the same as implementing a legal hold and conducting a systematic search for relevant documents." *Doc. 125* at 2.

While Selip's failure to preserve relevant evidence warrants corrective action by the court, our inquiry does not end here. To determine whether an extreme sanction such as default judgment or an adverse inference at trial is justified, we turn to an analysis of whether Selip's failure to preserve evidence led to the actual suppression or withholding of evidence. *See Bull*, 665 F.3d at 73

(noting that the "actual suppression or withholding of evidence" is an element necessary to prove spoliation).

### C. There Is Insufficient Evidence to Conclude that Selip Suppressed or Withheld Evidence.

Marsulex argues that the sheer lack of documents produced by Selip shows that Selip must have suppressed evidence. Marsulex notes a number of examples where additional documents must exist. First, Marsulex points to the fact that Selip has not produced any emails or notes from Alfieri's visit to the ZAP plant. *Doc. 113* at 8. Marsulex argues that Alfieri not sending any emails either during or about his visit and not taking any notes during the visit is "impossible to believe" given that his visit eventually resulted in the drafting of a "six-page, single-spaced report." *Id.* Second, Marsulex points to the meetings that occurred between Selip employees following Alfieri's visit to the plant. *Id.* at 8-9. Marsulex argues it is "implausible" that Selip's most senior engineer, Ferrari, was not sent a copy of Alfieri's report prior to the meeting and that Ferrari was not sent a copy of the report's final draft. *Id.* at 8-9. Third, Marsulex argues that the complete lack of emails and other communications produced cannot be believed. *Id.* at 10. "It beggars belief that Selip would have sent zero emails or other internal communications about an event it admits was one of the most monumental in its history." *Id.* Fourth, Marsulex argues that emails regarding Selip's visit to the

ZAP plant in 2013 must exist given that Pedrazzi sent a report to Marsulex summarizing the visit despite the fact that a different Selip employee had made the visit. *Id.* Marsulex argues that "Selip could not have coordinated a visit and an inspection and drafted a formal report without any electronic communications between its employees." *Id.* Finally, Marsulex argues that additional emails must exist regarding the report drafted by Fiberglass Structural Engineering ("FSE"), the third-party firm that Marsulex hired to examine ZAP's plant. *Id.* Marsulex argues it is implausible that Ferrari purportedly read the FSE report but "never received it electronically, took any notes about it, exchanged any e-mails about it, or drafted an analysis of FSE's findings." *Id.*

Selip argues there is insufficient evidence to support a finding that evidence was actually suppressed or withheld. *Doc. 122-2* at 18. Selip characterizes Marsulex's argument as one that "additional records 'must' exist." *Id.* "[S]uch conjecture," Selip argues, "cannot support a finding of spoliation in this Circuit." *Id.* (citing *Bull* 665 F.3d at 79).

A "general argument" that an opposing party has not produced enough emails or other electronic communications "is insufficient to establish that [the party] destroyed relevant evidence that it had a duty to preserve." *EEOC v. Performance Food Group, Inc.*, No. 13-1712, 2019 WL 1057385, at *15 (D. Md. Mar. 6, 2019); *see also Terrell v. Memphis Zoo, Inc.*, No. 17-CV-02928, 2018 WL

4189658, at *2-3 (W.D. Tenn. Aug. 8, 2018) (recommending that motion for sanctions be denied where plaintiff had produced no emails over extended period of time because there was no evidence that the plaintiff destroyed relevant evidence), *report and recommendation adopted*, No. 17-CV-02928, 2018 WL 4183224, at *1 (W.D. Tenn. Aug. 31, 2018); *Sampson v. City of Cambridge, Md.*, 251 F.R.D. 172, 183-84 (D. Md. Apr. 30, 2008) (denying motion for sanctions where no emails were produced from key witness's computer because it was "completely speculative to assume that any emails relevant to [the case] were lost").

We agree with Selip's argument that there is insufficient evidence on the record to conclude that Selip destroyed or otherwise suppressed evidence. Marsulex makes a generalized argument that additional evidence must exist given Selip's failure to properly preserve evidence. *See, e.g.*, *doc. 113* at 8 ("Additional responsive documents were almost certainly created in connection with [Alfieri's] visit and drafting the report."); *doc. 113* at 10 ("It beggars belief that Selip would have sent zero emails or other internal communications about an event that it admits was one of the most monumental in its history."). Such a general argument is insufficient to establish that a party engaged in spoliation. *Performance Food Group*, 2019 WL 1057385, at *15.

28

Despite our agreement with Selip's argument, however, we also agree with Marsulex's contention that the almost complete lack of documents is highly implausible. There is evidence in the record that Selip's employees regularly use email. *See, e.g.*, *doc. 114-8* at 4 (email from Carlo Romani to representatives at Marsulex that copies other Selip employees, including Ferrari, Alfieri, and Pedrazzi); *doc. 114-6* at 90:19-20 (testimony by Alfieri that he checks his emails "every day"). Moreover, the depositions of Alfieri and Romani suggest that additional documents exist that Selip has not produced. For example, Alfieri testified that an engineer named Romani[2] likely emailed copies of the first draft of Alfieri's report to other employees prior to a discussion about the report. *Doc. 114-6* at 53:24-54:5. Alfieri testified that he likely received comments about the report via email, but could not remember the specific comments. *Id.* at 58:14-17. Alfieri also testified that he likely sent emails about the report to Romani, Ferrari, and another Selip employee named Bassini. *Id.* at 98:21-99:3. Romani's deposition testimony suggests that Selip may have generated an internal report regarding the incident at the ZAP plant. *See doc. 114-1* at 80:5-81:8. Romani's

---

[2] Alfieri and Ferrari refer to an "Engineer Romani" in their depositions. It appears from the record that these references are not to Carlo Romani, but rather to a different Selip employee also named Romani. Unless otherwise stated, all references to "Romani" in this opinion are meant to refer to Carlo Romani.

testimony also suggests that Selip might have had calculations about the incident that were not produced.[3] *Id.* at 115:11-14.

Thus, while we conclude that spoliation sanctions are not warranted based on the evidence before us at this time, the implausibility of Selip's argument that almost no internal communications exist coupled with Selip's failure to implement a formal litigation hold and failure to otherwise properly preserve evidence leads us to conclude that sanctions are warranted in order to obtain additional evidence as to whether Selip engaged in the spoliation of evidence. Accordingly, we turn to Marsulex's alternative argument that the court should order a forensic investigation of Selip's computers to determine whether Selip destroyed or withheld evidence. *Doc. 113* at 15-16.

### D. Selip Must Pay for a Forensic Investigation of Its Employees' Computers.

A forensic investigation of a litigant's computer is a non-routine "intrusion" that may be ordered "as a sanction after a litigant has failed to preserve evidence, equivocally responded to discovery or otherwise resisted discovery." *Brooks Grp.*

---

[3] Selip produced a version of these calculations after Romani's deposition, but the date on the calculations was July 11, 2018, which was over a month after Romani's deposition had occurred. *See 85* at 5. As Marsulex noted in its letter requesting permission to file a formal motion for sanctions, "[e]ither these calculations did not exist at the time of Mr. Romani's deposition, and Mr. Romani's testimony was false, or the original calculations were destroyed and Selip spoliated evidence." *Doc. 85* at 10.

& *Assocs., Inc. v. Levigne*, No. 2:12-CV-02922, at *2 (E.D. Pa. May 17, 2013).

Courts have ordered forensic investigations to be performed to determine whether

electronically stored information was deleted or withheld. *See, e.g.*, *Wynmoor*

*Cmty. Council, Inc. v. QBE Ins. Corp.*, 280 F.R.D. 681, 687-88 (S.D. Fla. 2012)

(ordering forensic investigation to find electronically stored information where

party had refused to adequately search its own records); *AMG Nat'l Trust Bank v.*

*Ries*, No. 06-CV-04337, 2011 WL 3099629, at *5 (E.D. Pa. July 22, 2011)

(ordering forensic investigation to determine the extent of spoliation of evidence

where there was evidence that the defendant had deleted computer files); *Genworth*

*Fin. Wealth Mgmt., Inc. v. McMullan*, 267 F.R.D. 443, 449 (D. Conn. 2010)

(ordering forensic investigation of computer to find electronically stored

information that defendants had withheld from discovery); *Aliki Foods, LLC v.*

*Otter Valley Foods, Inc.*, 726 F. Supp. 2d 159, 173 (D. Conn. 2010) (noting

previous order in which court had ordered forensic investigation to recover deleted

emails and determine whether deletions were intentional); *Koosharem Corp. v.*

*Spec Personnel, LLC*, No. 6:08-CV-00583, 2008 WL 4458864, at *2 (D.S.C. Sept.

29, 2008) (ordering forensic investigation where defendant had failed to produce

relevant documents); *Treppel v. Biovail Corp.*, 249 F.R.D. 111, 124 (S.D.N.Y.

2008) (ordering forensic investigation to recover relevant emails that defendant

deleted); *U & I Corp. v. Advanced Med. Design, Inc.*, 251 F.R.D. 667, 676-77

(M.D. Fla. 2008) (ordering forensic investigation of computer to find electronically stored information that plaintiff had withheld from discovery); *see also Amfosakyi v. Frito Lay, Inc.*, 496 F. App'x 218, 220-21 (3d Cir. 2012) (upholding Middle District of Pennsylvania's granting of summary judgment and sanctions motions where district court had previously ordered forensic investigation of plaintiff's computer and forensic investigation established that plaintiff had falsified evidence).

Here, given Selip's failure to properly preserve evidence and the circumstantial evidence that additional documents exist but were not produced, we find that a forensic investigation is necessary to determine whether and to what extent Selip withheld, suppressed, or deleted evidence that was relevant to Marsulex's claims. Furthermore, because we find that Selip's failure to preserve evidence is the only reason that such an investigation is necessary, we will order Selip to pay the costs of the investigation.

Selip argues it is improper for the court to order a forensic investigation of its computers because Marsulex failed to provide "a proper evidentiary foundation regarding the potential cost of such a forensic examination, and this is clearly a matter requiring expert opinion testimony." *Doc. 122-2* at 19. Selip does not cite to any authority to support its assertion that expert testimony is necessary to order a forensic investigation, and our review of the case law does not suggest such a

requirement.  Moreover, while we are mindful that a forensic investigation could cost Selip a significant amount of money, we find that such an investigation is necessary solely because of Selip's failure to properly preserve evidence.  High costs to Selip are therefore not an adequate reason for the court to refrain from ordering a forensic investigation.  Accordingly, we will order Selip to pay for a forensic investigation of its computers.

## V. Conclusion.

For the foregoing reasons, we will grant Marsulex's motion for sanctions insofar as it seeks a forensic investigation of Selip's computers but deny it insofar as it seeks more extreme sanctions or attorneys' fees and costs.  Selip will be required to pay for a forensic investigation of the work computers of Romani, Ferrari, Alfieri, and Pedrazzi, who we conclude are the four employees whose computers are most likely to show evidence of spoliation by Selip.  In addition, our denial of Marsulex's motion for more extreme sanctions will be without prejudice to Marsulex filing an additional motion for sanctions in the event that the forensic investigation uncovers additional evidence that Selip withheld, suppressed, or destroyed relevant evidence.  An appropriate implementing order follows.

_S/Susan E. Schwab_
Susan E. Schwab
Chief United States Magistrate Judge