# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MARSULEX ENVIRONMENTAL TECHNOLOGIES, | : | CIVIL NO.: 1:15-CV-00269 |
| | : | |
| Plaintiff, | : | |
| | : | (Chief Magistrate Judge Schwab) |
| v. | : | |
| | : | |
| SELIP S.P.A., | : | |
| | : | |
| Defendant. | : | |

## **MEMORANDUM**
May 21, 2019

**I. Introduction.**

This case arises from a catastrophic incident at a fertilizer manufacturing plant in Poland owned by Zaklady Azotowe Pulawy S.A. ("ZAP"), a Polish chemical company. The plaintiff, Marsulex Environmental Technologies ("Marsulex"), is a Delaware corporation with a principal place of business in Pennsylvania that oversaw the design and purchasing of parts for the construction of a Flue Gas Desulfurization unit ("FGD unit" or "the unit") within ZAP's plant. The defendant, Selip S.P.A. ("Selip"), is an Italian corporation that manufactures external fiberglass reinforced plastic piping ("FRP piping" or "the piping").

In 2010, Marsulex and Selip entered into a contract that required Selip to design, manufacture, and supply FRP piping for use in the construction of the FGD unit in ZAP's plant. After the unit was constructed and put into use in the plant, ZAP allegedly discovered that the piping Selip had supplied was defective. The FGD unit subsequently failed, causing ZAP to shut down its plant. Marsulex covered the costs of the unit's failure and then sought reimbursement for those costs from Selip. After Selip refused to reimburse Marsulex, Marsulex initiated this litigation.

The case is presently before us on a motion for summary judgment filed by Selip. We find that there are genuine issues of material fact that preclude the entry of summary judgment and accordingly deny Selip's motion.

**II. Procedural History.**

Marsulex filed suit against Selip for the alleged failure of the FRP piping on September 6, 2015, raising causes of action for strict products liability, breach of contract, breach of an express warranty, breach of an implied warranty, and unjust enrichment. *Doc. 1* at 9-13. On April 1, 2015, Selip filed a motion to dismiss Marsulex's complaint, arguing under the doctrine of *forum non conveniens* that the complaint should be dismissed because the proper forum was Poland rather than Pennsylvania. *Doc. 6* at 7-9. Selip also argued that Marsulex's strict liability

2

claim should be dismissed under the economic loss doctrine and the gist of the action doctrine. *Id.* at 9-12. On July 13, 2015, the parties consented to the jurisdiction of a United States Magistrate Judge, and the case was reassigned to the undersigned. *Doc. 15*.

On March 18, 2016, following oral argument, we issued a memorandum and order addressing Selip's motion to dismiss. *Doc. 28-29*. We denied Selip's motion to dismiss under the *forum non conveniens* doctrine but granted its motion to dismiss Marsulex's strict liability claim, reasoning that a claim seeking recovery solely for damages to the FRP piping was barred by the economic loss doctrine. *Doc. 28* at 26. In doing so, we granted Marsulex leave to file an amended complaint to cure the deficiencies in its strict liability claim. *Id.* at 27. Marsulex then filed its amended complaint on April 15, 2016. *Doc. 33*.

On June 30, 2016, Selip filed a motion to dismiss Marsulex's amended complaint and a brief in support of its motion. *Docs. 42*, *44*. Selip again argued that Marsulex's strict liability claim should be dismissed under either the economic loss doctrine or the gist of the action doctrine. *Doc. 42* at 10-13. Selip also argued that a clause in the parties' contract, Section 27, barred all of Marsulex's claims against it. *Id.* at 9.

We addressed Selip's second motion to dismiss in a memorandum and order on March 27, 2017. *Docs. 49-50*. We granted the motion to dismiss insofar as it

3

sought dismissal of Marsulex's strict liability claim but denied the motion to dismiss with regard to the rest of Marsulex's claims. *Doc. 50* at 1-2. We reasoned that Section 27 of the parties' contract was not an exculpatory clause; it was a limitation-of-liability clause. *Doc. 49* at 16. "The plain language of Provision 27 does not exempt or otherwise immunize either party from the consequences of its own actions. Instead, the Provision merely limits the type of damages that the parties may recover against one another." *Id.*

Following our resolution of the motion to dismiss, Selip filed an answer to Marsulex's complaint on May 5, 2017. *Doc. 53*. We then issued an amended case management order on October 26, 2017 to govern the parties' discovery efforts, followed by a second amended case management order on January 25, 2018. *Docs. 61, 67*.

On March 23, 2018, counsel for Marsulex filed a letter informing the court of Selip's allegedly deficient discovery responses. *Doc. 68*. That letter marked the beginning of the court's involvement in a contentious discovery dispute between the parties that culminated in Marsulex filing a formal motion for sanctions on January 25, 2019. *Doc. 112*.[1] We address Marsulex's motion for sanctions in a separate memorandum and order.

---

[1] Since the discovery dispute is not directly relevant to our resolution of Selip's motion for summary judgment, we do not belabor the procedural history of the

4

Selip filed its motion for summary judgment and a brief in support of its motion on January 31, 2019. *Docs. 115-16*. Marsulex filed a brief in opposition on February 21, 2019, and Selip then filed a reply brief on March 7, 2019. *Docs. 117*, *123*. We began our analysis of the motion in April and subsequently issued an order striking Selip's answer to Marsulex's amended complaint from the record because it did not sufficiently respond to the amended complaint's factual allegations. *Doc. 126*. As per our order, Selip filed an amended answer to the amended complaint on May 2, 2019. *Doc. 127*.

**III. Summary Judgment Standard.**

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*

In a summary judgment motion, the moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

dispute here. That procedural history is set forth more fully in our memorandum addressing Marsulex's motion for sanctions.

demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). With respect to an issue on which the nonmoving party bears the burden of proof, the moving party may discharge that burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the moving party has met its burden, the nonmoving party may not rest upon the mere allegations or denials of its pleading; rather, the nonmoving party must show a genuine dispute by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed. R. Civ. P. 56(c). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. *Celotex*, 477 U.S. at 322. Summary judgment is also appropriate if the nonmoving party provides merely colorable, conclusory, or speculative evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). There must be more than a scintilla of evidence supporting the nonmoving party's claims and more than some metaphysical doubt as to the material facts. *Id.* at 252. "Where the record taken as

a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. *Id.* at 248-49. When "faced with a summary judgment motion, the court must view the facts 'in the light most favorable to the nonmoving party.'" *N.A.A.C.P. v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

At the summary judgment stage, the judge's function is not to weigh the evidence or to determine the truth of the matter; rather it is to determine whether there is a genuine issue for trial. *Anderson,* 477 U.S. at 249. The proper inquiry for the court "is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

**IV. Material Facts.**

When filing a motion for summary judgment, the moving party must comply with Local Rule 56.1, which requires the party to file "a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. Pa. L.R. 56.1. Once the moving party has filed such a statement, the non-moving party is required to file "a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement . . . as to which it is contended that there exists a genuine issue to be tried." *Id.*

In this case, Selip filed a statement of material facts as part of its summary judgment motion on January 31, 2019. *See doc. 115* at 2. Marsulex filed a response to Selip's statement of material facts on February 21, 2019. *Doc. 118.* We base the following statement of facts on those statements, Marsulex's amended complaint, and Selip's amended answer to Marsulex's amended complaint. The following facts are either undisputed or construed in the light most favorable to Marsulex as the non-movant.

Marsulex and ZAP first entered into a contract for the construction of the FGD unit on January 22, 2010. *Doc. 33* ¶¶ 9-10; *doc. 127* ¶¶ 9-10. After Marsulex determined that the unit would need to contain FRP piping, it entered into another contract with Selip for the provision of the piping. *Doc. 33* ¶¶ 12-14; *doc. 127* ¶¶

12-14. The purpose of the FRP piping within the FGD unit was to distribute slurry for the removal of sulfur dioxide. *Doc. 115* ¶ 23; *doc. 118* ¶ 23. The slurry that the FRP piping distributed was made up of ammonium sulfate and was in a liquid form. *Doc. 115* ¶¶ 23-24; *doc. 118* ¶ 23-24.

    The contract between Marsulex and Selip required Selip to fabricate FRP piping in accordance with Selip's procedures and approved drawings. *Doc. 33* ¶ 14; *doc. 127* ¶ 14. The contract specified that "[t]he inner and outer surface" of the piping had to be "free of cracks and crazing with a smooth finish." *Doc. 33-1* § 4.4. The contract also specified that the piping was to be "of merchantable quality, free from all defects in design, workmanship and materials, and . . . fit for the particular purposes for which [it was] purchased." *Doc. 33-3* § 10(b). The piping was also to be "provided in strict accordance with the specification, samples, drawings, designs or other requirements (including performance specification) approved by [Marsulex]." *Id.* In the supplementary terms of the contract, Selip warranted that the piping would (1) "be properly and professionally constructed"; (2) "meet the technical requirements of the Purchase Order including the standards and regulations as well as the best engineering practices"; and (3) "be new and used, of the specified material, free of defects and fit for the application specified." *Doc. 33-2* § 5.

Selip delivered the piping to ZAP's plant on February 3, 2011. *Doc. 33 ¶ 18; doc. 127 ¶ 18.* At the time the piping was delivered, Marsulex believed that Selip had fulfilled its contractual obligation. *Doc. 115 ¶ 28, 33-34; doc. 118 ¶ 28, 33-34.* Following the delivery, ZAP stored the piping at its plant. *Doc. 115 ¶ 29; doc. 118 ¶ 29.* Marsulex was unaware of any defects in the piping either at the time of the delivery or the time of the installation of the piping. *Doc. 115 ¶¶ 33-34; doc. 118 ¶¶ 33-34.* However, a visual inspection of the piping at either time would not have revealed any defects in the internal composition of the piping. *Doc. 120 ¶ 6.* The piping was installed at the plant by a third-party contractor, Mostostal. *Doc. 115 ¶ 30; doc. 118 ¶ 30.* Marsulex provided Mostostal with Selip's instructions for the installation of the piping but was not otherwise involved in the installation. *Doc. 115 ¶ 31; doc. 118 ¶ 31.*

ZAP began using the FGD unit containing the piping in October 2012. *Doc. 33 ¶ 19; doc. 127 ¶ 19.* In January 2013, Selip was notified that there were cracks in the piping. *Doc. 33 ¶ 20; doc. 127 ¶ 20.* Selip classified the cracks as superficial and filled them with resin. *Id.* In September 2013, Selip was notified of additional cracks in the piping. *Doc. 33 ¶ 21; doc. 127 ¶ 21.* In April 2014, Selip went to ZAP's plant to examine the piping. *Doc. 33 ¶ 22; doc. 127 ¶ 22.*

After its visit to the plant in April 2014, Selip completed a report on April 4, 2014, which was authored by Selip's Service Manager, Giuseppe Alfieri. *Doc.*

*115-20*. The report stated that "[s]ome superficial cracks" were detected on the external surface of the piping but concluded that there were no issues in the mechanical structure of the piping. *Id.* at 2-3. The report also stated that Selip had found "multiple changes" from the original project specifications and design. *Id.* at 4. Selip stated that such modifications had been made to compensate for the "high vibrations" that occurred in the plant. *Id.* Selip further stated that "the sliding point and the EPDM gasket" of the FGD unit were "too tightened to the piping." *Id.* at 5. Selip concluded that because the cracks in the piping were superficial, there was "no risk about the piping['s] mechanical structure" or "the full functionality." *Id.* at 6. Selip also noted that because of the modifications to the piping, the company declined "any responsibility for superficial cracks and/or any further issues" at ZAP's plant. *Id.* Selip therefore stated that while it would provide "support and assistance to repair the superficial cracks," all costs for such work would be charged to either Marsulex or ZAP. *Id.* at 8.

In late May of 2014, the FGD unit malfunctioned, which caused significant damage to ZAP's plant and resulted in ZAP shutting its plant down for approximately three months. *Doc. 33* ¶¶ 24-25, 27; *doc. 127* ¶¶ 24-25, 27. ZAP informed Marsulex of the malfunction on June 2, 2014, and Marsulex informed Selip the same day. *Doc. 33* ¶ 23; *doc. 127* ¶ 23.

Following the malfunction of the FGD unit, Marsulex hired a third-party company, Fiberglass Structural Engineering ("FSE"), to investigate the site of the malfunction. *Doc. 33* ¶ 30; *doc. 127* ¶ 30. FSE was given flange samples from the FGD unit, which it investigated using visual inspection and "burn testing of cross-sections taken from the samples." *Doc. 115-8* at 2. FSE issued a report on its findings on August 15, 2014. *See id.* FSE noted that the flange samples "indicate[d] a generally poor construction method which uses low strength reinforcement and nonstructural components in the flange area." *Id.* at 26. FSE stated that this construction method would "reduce the load-bearing capability of the flanges" and concluded that the flange samples did not meet Selip's design and fabrication requirements. *Id.* FSE also found "a significant issue" with the elbow flange samples that it evaluated. *Id.* at 24. Specifically, FSE found that the elbow flanges "were constructed with a non-structural short segment of pipe placed behind the flange, extending the length of the elbow" as opposed to the "standard industry practice" which "would be to lay-up the flanges directly on the end of an elbow, such that the elbow structural laminate extends completely to the flange face, and the nominal center-to-end dimension for an elbow is maintained." *Id.* This "unconventional procedure" reduced the overall strength of the elbow flanges. *Id.* at 25. FSE further found that "[t]he laminate construction does not comply with the Selip Working Procedure for the type and amount of reinforcement

required." *Id.* FSE noted that "all but one" of the flange samples that it evaluated contained no woven roving layers, despite Selip's working procedures requiring the flanges to have sixteen woven roving layers. *Id.* FSE stated that "[t]he strength in the hub will be much less for a laminate consisting only of mat vs. the required laminate that contains multiple layers of woven roving." *Id.* Based on FSE's conclusions, Marsulex informed Selip that the malfunction was caused by defects in the FRP piping that Selip manufactured. *Doc. 33* ¶ 36; *doc. 127* ¶ 36. MET requested payment from Selip for $557,873.53, which Selip refused to pay. *Doc. 33* ¶¶ 38-39; *doc. 127* ¶¶ 38-39. Marsulex's requested total was based on subtotals of $440,337 for the customer claim from ZAP; $84,445.03 for internal costs; and $53,091.50 for external costs, primarily taken from the fee that FSE charged Marsulex. *See doc. 115-17*.

During the discovery process in this case, Selip deposed Michael Walsh ("Walsh"), Marsulex's Senior Vice President for Engineering and Chief Operating Officer, who was designated to testify on Marsulex's behalf under Federal Rule of Civil Procedure 30(b)(6). *See doc. 115-12*. Walsh testified that he had observed photographs taken shortly after the incident in ZAP's plant, and that none of those photographs showed any slurry on the floor of the plant. *Id.* at 44:18-24. This was likely because any slurry that had been on the floor had been cleaned up prior to the photographs being taken. *Id.* at 45:1-4. According to Walsh, ZAP had

represented to Marsulex shortly after the accident that the FRP piping had failed. *Id.* at 53:13-54:7. Walsh specified that "[t]he discharge line just downstream of the pump expansion joint" failed and that the FGD unit was in operation at the time of the failure. *Id.* at 62:14-19.

**V. Discussion.**

Selip argues that it is entitled to summary judgment on Marsulex's breach of contract claims because Marsulex cannot establish either a breach of the parties' contract or damages arising from an alleged breach.[2] Selip argues that it is entitled to summary judgment on Marsulex's breach of contract claims because Marsulex cannot establish either a breach of the parties' contract or damages arising from an alleged breach. *Doc. 116* at 5. Selip asserts that because of the lack of causation evidence, Marsulex would be unable to prove either a breach or damages at trial. *Id.* at 6. Selip notes that although the FSE report was "critical of the construction

---

[2] Although its motion is titled a motion for summary judgment rather than a motion for partial summary judgment, Selip does not raise any arguments as to why it is entitled to summary judgment on Marsulex's breach of warranty or unjust enrichment claims. *See generally docs. 115-16*. In addition, Selip specifies on the first page of its motion that "[t]he issue of summary judgment arises out of a breach of contract action related to the construction of a Flue Gas Desulfurization Unit in Pulawy, Poland." *Doc. 115* at 1. Moreover, Marsulex argues in its brief in opposition to Selip's motion that Selip did not move for summary judgment on Marsulex's breach of warranty or unjust enrichment claims, and Selip does not respond to that argument in its reply brief. *See doc. 117 at 13, 15; see generally doc. 123*. Accordingly, we will construe Selip's motion for summary judgment as only seeking summary judgment on Marsulex's breach of contract claims.

14

method" used by Selip in constructing the flanges, the report did not "reach a conclusion as to the cause of the underlying incident of May 31, 2014," which Selip argues is the foundation of Marsulex's claim. *Id.* Because of the FSE report not reaching such a conclusion, Selip argues that Marsulex "has *no evidence* to establish the causal link between the alleged breach of contract and the damages allegedly incurred at the ZAP plant in Pulawy, Poland." *Id.* Selip further argues that Marsulex has produced insufficient evidence for a finder of fact to determine Marsulex's damages. *Id.* at 7. Marsulex responds that Selip's argument is a "speculative" attack on the weight of Marsulex's evidence. *Doc. 117* at 2. Marsulex argues "[t]here is no evidence to support Selip's conjecture" that Marsulex has insufficient evidence to prove its claims. *Id.*

Viewing the facts in the light most favorable to Marsulex as the nonmovant, we find that there are genuine issues of material fact that preclude the entry of summary judgment. The contract between Marsulex and Selip contained a number of provisions governing the quality of the FRP piping that Selip was to manufacture and provide. Given the evidence in the record of possible defects in the FRP piping—including FSE's finding that the flange samples it examined did not meet Selip's design and fabrication requirements, FSE's finding of a significant issue in the elbow flanges that Selip manufactured, and FSE's finding that all but one of the flange samples that it examined did not contain any woven

15

roving layers—a reasonable finder of fact could find that Selip breached its contract with Marsulex. *See Anderson*, 477 U.S. at 248-49.

There are also genuine issues of material fact as to causation and damages. Selip was notified of cracks in the piping on two separate occasions in the year and a half before the malfunction at ZAP's plant. *Doc. 33* ¶ 20-21; *doc. 127* ¶ 20-21. These visits coupled with FSE's findings that Selip's construction methods lowered both the strength and the load-bearing capacity of the FRP piping (*doc. 115-8 at 25-26*) would be sufficient evidence for a reasonable finder of fact to conclude that Selip's breach of the parties' contract caused harm to Marsulex. Similarly, a reasonable finder of fact could conclude that Marsulex suffered damages as a result of Selip's breach given FSE's findings on Selip's deficient performance along with Marsulex's initial cost estimate (*doc. 115-17*). We therefore find that there are genuine issues of material fact that preclude the entry of summary judgment and accordingly deny Selip's motion.

**VI. Conclusion.**

For the foregoing reasons, Selip's motion for summary judgment is denied. An appropriate implementing order follows.

*S/Susan E. Schwab*
Susan E. Schwab
Chief United States Magistrate Judge